UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID ROMANKOW and JACLYN ROMANKOW, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br>    v.<br><br>NEW YORK UNIVERSITY,<br><br>                         Defendant. | No.<br><br>**CLASS ACTION COMPLAINT<br>AND JURY DEMAND** |

Plaintiffs, David Romankow and Jaclyn Romankow, individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendant New York University ("NYU"), based upon personal knowledge as to their own actions and based upon the investigation of counsel regarding all other matters, complain as follows:

**NATURE OF ACTION**

1.  This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19. Social distancing, shelter-in-place orders, and efforts to "flatten the curve" prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.  Despite sending students home and closing its campuses, Defendant continues to charge for tuition, fees, and/or room and board Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for

a comprehensive academic experience, Defendant instead offers Plaintiffs and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiffs and the Class Members did not bargain for such an experience.

3. While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4. As a result, Defendant's actions have financially damaged Plaintiffs and the Class Members. Plaintiffs bring this action because Plaintiffs and the Class Members did not receive the full-value of the services paid and did not receive the benefits of in-person instruction. They have also lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate

sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2) and (6). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than New York, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[1]

6. Venue is appropriate in this District because Defendant is located within the Southern District of New York. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

## PARTIES

7. Plaintiffs David Romankow and Jaclyn Romankow are residents and citizens of the State of New Jersey. Plaintiff Jaclyn Romankow was enrolled as a full-time undergraduate student for the Spring 2020 academic term at Defendant's NYU London program. Specifically, Jaclyn was enrolled in NYU's Tisch School of Arts London program, which is offered in collaboration with the Royal Academy of Dramatic Arts (RADA). Plaintiff David Romankow was responsible for and paid the tuition bill on behalf of his daughter, Jaclyn. Plaintiffs are in good financial standing with Defendant, having paid in whole or in combination tuition, fees and costs assessed and demanded by Defendant for the Spring 2020 term. Plaintiffs paid

---

[1] About 33.3% of the students attending New York University come from within New York. https://www.collegefactual.com/colleges/new-york-university/student-life/diversity/.

Defendant for opportunities and services that Jaclyn will not receive, including on- campus education, facilities, services, and activities.

8. Jaclyn specifically enrolled at NYU's London program to obtain the full experience of overseas, live, in-person courses and direct interactions with instructors and students, facilitated by small class sizes.

9. Jaclyn began classes in London on February 3, 2020 and the intended last day of class was May 22, 2020.

10. Jaclyn participated in classes/events in London from February 3, 2020 to March 10, 2020. Because of the coronavirus concerns, during the week of March 13, Jaclyn was instructed by NYU to leave London. She returned to New Jersey on March 16, 2020.

11. Jaclyn then had a hiatus in classes from March 11 to March 20. During this time, everyone was returning home due to the corona outbreak, and professors at RADA were trying to figure out how to proceed. No RADA classes occurred during this time.

12. On March 23, RADA professors announced that the London abroad students would only be receiving online (teleconference) classes going forward.

13. With Defendant's campus closure and transition to an online-only educational experience, Jaclyn suffered a decreased quality of experience and education, and lost access to important university facilities and experiences that were bargained for by selecting in-person instruction.

14. Jaclyn found the transition to online learning to be disruptive and ineffective with no oversight or accountability to ensure the same quality of education as in-person instruction. For example:

- Jaclyn's "Shakespeare In Performance" class was intended to consist of 13

sessions throughout the semester, each consisting of approximately 9 hours of in-class rehearsal time and culminating in a public on-stage performance in a RADA theater. Instead, this class consisted of 1 online rehearsal (5 hours), and 5 sessions (6 hours each) of video recording scene work between Jaclyn and her fellow classmates. There was no public performance, although they did make the final video available to the public.

- Jaclyn's "Shakespeare – Our Contemporary" class was intended to consist of 10 sessions throughout the semester, each consisting of 1.5 hours to 3 hours of instruction. This class would culminate in a final performance by Jaclyn and her fellow classmates. Instead, this class was completely reconfigured, and consisted of the following: A. One online session with professors and students in attendance (2 hours);  B. Each student created and submitted a 10-minute video analysis of a Shakespearean play; C. A final online recap class with professors and students in attendance (1 hour).

- Jaclyn's "Sonnets" class and "Speech Into Speeches" class were seriously degraded. For these classes in London, Jaclyn participated in 1.5 hour in-person sessions (twice a week) with professors and students. After returning to the United States, many of these sessions were reduced to 15-minute, one-on-one online sessions (once a week) between Jaclyn and a professor.

- As stated in the FACTS section below, the London Program promised that Jaclyn would receive stage combat training and a three-year certification from the British Academy of Stage and Screen Combat. Jaclyn began this training in London, but after returning to the United States, the training was

discontinued and no certification was granted.

15. Jaclyn lost the use of important facilities for her studies, including study spaces, university libraries, lounges, the dining halls, and performing arts centers. Jaclyn also lost access to her peers, which was a significant component in choosing an in-person academic experience, particularly one with a focus on performing arts.

16. Defendant NYU is a private institute of higher education, with a principal place of business located at 70 Washington Square South, New York, New York 10012. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiffs and the Class Members.

## FACTS

**A.    Background**

17. Founded in 1831, NYU is among the largest private universities in the United States and has a current enrollment of approximately 50,000 students across a variety of undergraduate and graduate areas of study.

18. For the fiscal year ending August 31, 2019, NYU's endowment had an approximate value of $4.3 billion. NYU also reported operating revenues and other support of approximately $3.378 billion, which included $1.91 billion in revenue from tuition and fees along with another $341 million in student housing and dining.[2]

19. The value of NYU's Endowment has increased by approximately 7.7% per year over the past 15 years.[3]

---

[2] https://www.nyu.edu/content/dam/nyu/facultyGovernance/documents/Fiscal%202019%20Operating.Capital%20Plan.pdf

[3] Id.

20. While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

21. Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

22. Spring Semester 2020 classes at NYU began on or about January 27, 2020. Final exams for the semester were scheduled to take place between May 13, 2020 and May 19, 2020.

23. Plaintiffs and Class members paid the cost of tuition for the spring semester 2020, as well as associated fees and costs.

24. Fees paid by or on behalf of NYU students vary based on program of study.

25. For instance, Plaintiffs paid a total of $36,196.00 for Jaclyn's spring semester 2020.

26. On March 9, 2020, NYU, through a news release, announced that because of the global COVID-19 pandemic, all in-person classes would be suspended beginning March 11, 2020. The announcement informed students that beginning March 11, 2020, classes would instead be held remotely through online formats. Online classes were to continue through March 27, 2020.[4]

27. On March 12, 2020, NYU informed students that "[w]e do not know when in-

---

[4] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/important-new-coronavirus-related-measures-and-restrictions-and-possible-future-steps.html

person classes will resume," but stated that "none of us should contemplate recommencing in-person classes before April 19."[5]

28. On March 16, 2020, NYU announced that it would be closing residence halls and holding classes remotely through the end of the semester. Students were required to be out of the residence halls by March 22, but preferably within 48 hours. Students were directed home for the remainder of the semester.[6]

29. NYU has not held any in-person classes since March 10, 2020. Classes that have continued have only been offered in an online format, with no in-person instruction.

30. As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and class members contracted and paid for. Plaintiffs and class members are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided. Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

31. Plaintiffs and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

32. Defendant markets the NYU on-campus experience as a benefit of enrollment on NYU's website, including available "Arts, Culture, and Entertainment[7]", "Safety, Health,

---

[5] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/a-message-from-president-andrew-hamilton.html
[6] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/update-on-covid-19.html
[7] https://www.nyu.edu/life/arts-culture-and-entertainment.html

and Wellness" benefits stemming from being in "the midst of New York City, NYU students are truly part of the tempo and excitement of Greenwich Village and beyond[8]", and myriad of other "Campus Resources[9]".

33.     With regard to its London Program in general, Defendant touts the immersive and cultural experience that its provides to students[10]:

- "You will come to London expecting to immerse yourself in its bustling and vibrant present-day life. But, to your excitement, you'll find that traces of the city's complex past appear on practically every corner. You will discover that two thousand years of history are sedimented into its built environment and collective memory."
- "Wherever possible, your time in the classroom is enhanced and extended by co-curricular activities, such as theatre visits and trips to galleries and places of architectural interest."
- "As a NYU London student, you automatically have access to the University of London's main library and become a member of the student union of University College London. This entitles you to join a wide array of clubs and associations, helping to extend your friendship circles beyond NYU."
- "Our Student Life team also offers a comprehensive program of activities and excursions so that you can attend London's football matches, musicals, comedy nights, and exhibitions and visit other regions and cities across the nation."

34.     When discussing the dramatic arts program for which Jaclyn was enrolled, NYU boasts that "You spend three days a week throughout the semester within the prestigious RADA facilities, whose halls have housed such notable alumni as Sir Anthony Hopkins, Ralph Fiennes, Alan Rickman, Mark Rylance, Maggie Gyllenhaal, Phoebe Fox, Gemma Aterton, and Taron Egerton.[11]"  "The emphasis of this practical program is on learning through the performance of Shakespeare: with work on sonnets, verse scenes, monologues, play projects, and a studio production; as well as classes in Voice, Physical

---

[8] https://www.nyu.edu/life/safety-health-wellness.html
[9] https://www.nyu.edu/life/campus-resources.html
[10] https://www.nyu.edu/london/about-us.html
[11] https://tisch.nyu.edu/special-programs/study-abroad/london-rada

Performance, Speech, Song, Dance, Clown and Armed Combat.[12]" "The combat training you receive at RADA will provide you with a three-year certification from the British Academy of Stage and Screen Combat.[13]"

35. The online learning options being offered to NYU students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. This is particularly true for students like Jaclyn focusing on dramatic arts because she cannot undertake required performances or partake of the facilities necessary to perform.

36. The remote learning options are not equivalent to the in-person education putative class members contracted and paid for. The remote education being provided is not even remotely worth the amount charged class members for Spring Semester 2020 tuition. The tuition and fees for in-person instruction at NYU are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience.

37. Through this lawsuit Plaintiffs seek, for herself and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided. Plaintiffs seek return of these amounts, as well as amounts paid by any student enrolled to participate in in-person and on campus credits or units, on behalf of herself and the Class as defined below.

38. While NYU has adjusted student accounts with prorated credits for room and

---

[12] Id.
[13] Id.

board based on the date students move out, Defendant has refused to give a prorated refund for fees paid for student services students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus andreturn home.

39. Defendant has also refused to provide any tuition adjustments, despite the significant changes Defendant implemented to student life, learning, and programs.

40. In a list of FAQ's, Defendant advises that tuition will not be refunded or discounted because "classes continue to be conducted remotely[14]."

41. Defendant's decision to not issue refunds or discounts for tuition paid despite its failure to provide Plaintiffs and the putative class with the benefit of their bargain, is unacceptable and improper.

## CLASS ACTION ALLEGATIONS

42. Plaintiffs sue under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Class defined as follows:

> **NYU Class**
>
> All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.
>
> **NYU Tisch Subclass**
>
> All persons enrolled at Defendant and Defendant's Tisch School of the Arts for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by

---

[14] https://www.nyu.edu/life/safety-health-wellness/coronavirus-information/information-for-students.html#finop

Defendant.

**<u>NYU Study Abroad Subclass</u>**

All persons enrolled at Defendant and Defendant's "Studying Abroad"[15] programs for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiffs reserve the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

43.     The definition of the Class is unambiguous.  Plaintiff Jaclyn Romankow is a member of the Class and subclasses she seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

44.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

---

[15] https://www.nyu.edu/academics/studying-abroad.html

45. Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

46. Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

47. Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

   a. Whether Defendant engaged in the conduct alleged;

   b. Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiffs and the Class Members;

   c. Whether Defendant breached identical contracts with Plaintiffs and the Class Members;

   d. Whether Defendant violated the common law of unjust enrichment;

   e. Whether Defendant converted Plaintiffs and the Class Members refunds and/or rights to refunds; and

   f. The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

48. The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

49. Plaintiffs' claims are typical of the claims of the other Class Members under

Rule 23(a)(3). Plaintiff Jaclyn Romankow is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff Jaclyn Romankow was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

50. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiffs are familiar with the basic facts that form the bases of the Class Members' claims. Plaintiffs' interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class Members.

51. The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

52. In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive

supervision by a single court.

53. Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiffs and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

54. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

55. Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

56. Plaintiffs and the Class Members entered into identical, binding contracts with Defendant.

57. Under their contracts with Defendant, Plaintiffs and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

58. Plaintiffs and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

59. However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiffs and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or

eliminated Plaintiffs' and the Class Members' ability to access university facilities, and/or has evicted Plaintiffs and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiffs and the Class Members from the benefit of their bargains with Defendant.

60. Plaintiffs and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

61. Plaintiffs and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

62. Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein with the exception of those allegations contained in Count I, which are specifically excluded.

63. At all times relevant hereto, Plaintiffs and the Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiffs and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

64. Defendant knowingly accepted the benefits conferred upon it by Plaintiffs and the Class Members.

65. Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiffs and Class Members.

66. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and Class Members, with full knowledge and awareness that, because of Defendant's unjust and

inequitable actions, Plaintiffs and Class Members are entitled to refunds for tuition, fees, and/or room and board.

67. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non- gratuitous benefits unjust and inequitable.

68. Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and Class Members is unjust and inequitable, Plaintiffs and Class Members are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## COUNT III

### CONVERSION

69. Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

70. Plaintiffs and the other Class Members have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiffs and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

71. Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiffs and Class Members by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiffs and the Class Members paid Defendant as well as barred Plaintiffs from Defendant's facilities.

72. Defendant deprived Plaintiffs and the other Class Members of the rights and

benefits for which they paid Defendant tuition, fees, and/or room and board.

73. Plaintiffs and/or Class Members have requested and/or demanded that Defendant issue refunds.

74. Defendant's interference with the rights and services for which Plaintiffs and members of the Class paid damaged Plaintiffs and Class Members, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiffs and Class Members of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members request that the Court enter an order or judgment against Defendant including:

A. Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B. Damages in the amount of unrefunded tuition, fees, and/or room and board;

C. Actual damages and all such other relief as provided under the law;

D. Pre-judgment and post-judgment interest on such monetary relief;

E. Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F. The costs of bringing this suit, including reasonable attorney's fees; and

G. All other relief to which Plaintiffs and Class Members may be entitled by law or in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on their own behalf and on behalf of Class Members.

Dated: June 16, 2020

Respectfully submitted,
*/s/ Todd S. Garber*
Todd. S. Garber
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, NY 10601
Tel: 914-298-3283
tgarber@fbfglaw.com

Matthew R. Mendelsohn
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel (973) 228-0391
Fax (973) 228-0303
mrm@mazieslater.com