**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

DAVID ROMANKOW and JACLYN
ROMANKOW, on behalf of themselves and all
others similarly situated,

                 Plaintiffs,

                 v.

NEW YORK UNIVERSITY,

                 Defendant.

Case No. 1:20-cv-04616-GBD

**DEFENDANT NEW YORK UNIVERSITY'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT**

**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

    A.    NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees........................................ 3

    B.    The Covid-19 Pandemic Forces NYU's Transition to Remote Learning............... 4

    C.    NYU Provides Certain Refunds to Students.......................................... 5

    D.    The Plaintiffs............................................................................ 5

ARGUMENT ....................................................................................................... 6

I.    Standard of Review.................................................................................. 6

II.    The Plaintiffs' Claims Should Be Dismissed Because The Court Should Not Intervene in Educational Decisions. .......................................................... 7

III.    The Plaintiffs Do Not Have Article III Standing To Assert Certain Claims. ................... 9

    A.    Mr. Romankow Lacks Standing as a Parent. ............................................ 9

    B.    The Plaintiffs Lack Standing to Assert Claims Relating to Colleges, Schools, and Programs In Which Ms. Romankow Was Not Enrolled. ................ 10

    C.    The Plaintiffs Lack Standing to Seek Injunctive Relief...................................... 12

IV.    The Study Away Travel Release Bars the Plaintiffs' Claims. ......................................... 13

V.    The Plaintiffs' Breach of Contract Claim Must Be Dismissed........................................ 14

    A.    The Plaintiffs Have Not Identified a Specific Promise That Was Broken. .......... 14

    B.    NYU Did Not Breach Any Contract................................................................. 17

    C.    Covid-19 Rendered Performance of the Alleged Contract Impossible. .............. 19

    D.    The Plaintiffs Failed Adequately to Allege Damages........................................... 20

VI.    The Plaintiffs' Unjust Enrichment Claim Must Be Dismissed....................................... 21

    A.    The Unjust Enrichment Claim Must Be Dismissed As Duplicative.................... 21

    B.    NYU Was Not Unjustly Enriched................................................................. 22

VII.    The Plaintiffs' Conversion Claim Must Be Dismissed.................................................. 23

    A.    The Conversion Claim Must Be Dismissed As Duplicative................................ 23

    B.    The Plaintiffs Fail to State a Claim for Conversion........................................... 24

        1.    The Right To In-Person Classes Is Intangible Property Not Subject to a Conversion Claim. ...........................................................................25

        2.    The Plaintiffs Had No Ownership Interest in In-Person Classes..............25

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital LLC*,
   2001 WL 410074 (S.D.N.Y. April 23, 2001) .........................................................................14

*Andre v. Pace Univ.*,
   655 N.Y.S.2d 777 (2d Dep't 1996)................................................................................7, 16

*Anthes v. New York Univ.*,
   2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v.
   Nelson*, 763 F. App'x 57 (2d Cir. 2019) ......................................................................15, 16

*Architectural Body Research Found. v. Reversible Destiny Found.*,
   335 F. Supp. 3d 621 (S.D.N.Y. 2018)................................................................................3

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
   2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009)....................................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................6

*Babiker v. Ross Univ. School of Med.*,
   2000 WL 666342 (S.D.N.Y. May 19, 2000), *aff'd* 86 Fed. App'x 457 (2d Cir.
   2004) ................................................................................................................................18

*Barsoumian v. Williams*,
   29 F. Supp. 3d 303 (W.D.N.Y. 2014) ................................................................................7

*Bautista v. CytoSport, Inc.*,
   223 F. Supp. 3d 182 (S.D.N.Y. 2016)................................................................................21

*Berman v. Sugo LLC*,
   580 F. Supp. 2d 191 (S.D.N.Y. 2008)................................................................................25

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005)................................................................................................3

*Bytemark, Inc. v. Xerox Corp.*,
   342 F. Supp. 3d 496 (S.D.N.Y. 2018)................................................................................21

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*,
   2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016)....................................................................17

*Cheves v. Trustees of Columbia University*,
   89 A.D.3d 464 (1st Dep't 2011) ......................................................................................16

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
   123 F. Supp. 2d 133 (S.D.N.Y. 2000)............................................................24, 25

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)....................................................................................12, 13

*DiMuro v. Clinique Labs. LLC*,
   572 F. App'x 27 (2d Cir. 2014) .............................................................................11

*Doe v. Columbia Univ.*,
   2020 WL 1528545 (S.D.N.Y. Mar. 31, 2020) .................................................15, 17

*Doe v. Univ. of the South*,
   687 F. Supp. 2d 744 (E.D. Tenn. 2009).....................................................................9, 10

*Doyle v. MasterCard Int'l Inc.*,
   2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) ......................................................20

*Gally v. Columbia Univ.*,
   22 F. Supp. 2d 199 (S.D.N.Y. 1998)...........................................................8, 14, 15

*Gertler v. Goodgold*,
   107 A.D.2d 481 (1st Dep't 1985), *aff'd* 66 N.Y.2d 946 (1985) ..............................7

*Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*,
   288 F. Supp. 2d 473 (S.D.N.Y. 2003)..........................................................................25

*Goel v. Ramachandran*,
   111 A.D.3d 783 (2d Dep't 2013) .............................................................................22, 23

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................................22

*Kamen v. Am. Tel. & Tel. Co.*,
   791 F.2d 1006 (2d Cir. 1986).....................................................................................3

*Keefe v. New York Law Sch.*,
   71 A.D.3d 569 (1st Dep't 2010) ...........................................................................15

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009)...........................................................24, 25

*Kolodin v. Valenti*,
   115 A.D.3d 197 (1st Dep't 2014) .........................................................................19, 20

*L. N. Jackson & Co. v. Royal Norwegian Gov't*,
   177 F.2d 694 (2d Cir. 1949)................................................................................19

*Laramee v. Jewish Guild for the Blind,*
  72 F. Supp. 2d 357 (S.D.N.Y. 1999)...................................................................14

*Maas v. Cornell Univ.,*
  94 N.Y.2d 87 (1999) .............................................................................................7

*Mahoney v. Endo Health Solutions, Inc.,*
  2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016) ........................................................21

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. 2000)..............................................................................3, 6

*Matzan v. Eastman Kodak Co.,*
  134 A.D.2d 863 (4th Dep't 1987) ........................................................................25

*McCormick v. Dresdale,*
  2010 WL 1740853 (D.R.I. April 28, 2010) ...........................................................9

*Metal Cladding, Inc. v. Brassey,*
  159 A.D.2d 958 (4th Dep't 1990) ........................................................................23

*Meyer v. Uber Techs., Inc.,*
  868 F.3d 66 (2d Cir. 2017)...................................................................................14

*Mihalakis v. Cabrini Med. Ctr.*
  151 A.D.2d 345 (1st Dep't 1989) .........................................................................21

*Morrison v. Nat'l Austl. Bank Ltd.,*
  547 F.3d 167 (2d Cir. 2008)...................................................................................6

*Mueller v. Michael Janssen Gallery Pte. Ltd.,*
  225 F. Supp. 3d 201 (S.D.N.Y. 2016)..................................................................23

*Nicosia v. Amazon.com, Inc.,*
  834 F.3d 220 (2d Cir. 2016).................................................................................12

*Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.,*
  49 N.Y.2d 408 (Ct. App. 1980) ...........................................................................18

*Organizacion JD LTDA v. U.S. Dep't of Justice,*
  18 F.3d 91 (2d Cir. 1994)...............................................................................19, 20

*OTG Brands, LLC v. Walgreen Co.,*
  2015 WL 1499559 (S.D.N.Y. Mar. 31, 2015) .................................................24, 25

*Paladino v. Adelphi Univ.,*
  454 N.Y.S.2d 868 (2d Dep't 1982).........................................................................7

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ..............................................................11

*Paynter v. New York University*,
  319 N.Y.S.2d 893 (1st Dep't 1971) ........................................................................8

*Police Benev. Ass'n of New York State Police, Inc. v. New York*,
  358 N.Y.S.2d 280 (1974) ......................................................................................10

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
  2005 WL 1214281 (S.D.N.Y. May 20, 2005) ...........................................................7

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v.*
  *Bank of N.Y. Mellon*,
  775 F.3d 154 (2d Cir. 2014)..............................................................................11, 12

*Rodriguez v. New York Univ.*,
  2007 WL 117775 (S.D.N.Y. Jan. 16, 2007) ...........................................................18

*Roe v. Loyola Univ. New Orleans*,
  2007 WL 4219174 (E.D. La. Nov. 26, 2007) .....................................................17, 23

*Samad v. Goldberg*,
  2016 WL 6678923 (S.D.N.Y. Nov. 14. 2016) .........................................................22

*Schachter v. U.S. Life Ins. Co. in City of New York*,
  77 F. App'x 41 (2d Cir. 2003) ................................................................................6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)............................................................................................12

*Suffolk Cty. v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984)........................................................................................9

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*,
  196 F. Supp. 2d 378 (S.D.N.Y. 2002)......................................................................23

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2020 WL 2907676 (S.D.N.Y. June 3, 2020) ...........................................................14

*Ward v. New York Univ.*,
  2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)..........................................15, 16, 17, 18

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015).......................................................................3

*WestLB AG v. BAC Fla. Bank*,
  912 F. Supp. 2d 86 (S.D.N.Y. 2012).......................................................................21

*Yalincak v. New York Univ.*,
   2009 10714654 (D. Conn. Sept. 3, 2009) .......................................................................21, 22

*Zirvi v. Flatley*,
   433 F. Supp. 3d 448 (S.D.N.Y. 2020)................................................................................25

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)..........................................................................................................6

Fed. R. Civ. P. 12(b)(6)..........................................................................................................6

Fed. R. Evid. 201 ...................................................................................................................3

## PRELIMINARY STATEMENT

The novel coronavirus disease 2019 ("Covid-19") unleashed unprecedented and unanticipated threats to global public health and safety.  Public health officials and New York State, as well as the U.S. and U.K. governments, issued directives designed to protect the public – including the students, faculty, and staff at universities such as defendant New York University ("NYU") – from the growing danger from Covid-19.  These directives and the threats attendant to large groups congregating on a college campus forced NYU to make the difficult but well-considered decision to transition completely from in-person to remote teaching for the remainder of the Spring 2020 semester, following NYU's spring break.  Notwithstanding the significant logistical effort and expense involved, NYU and its faculty remained committed to delivering a world-class educational experience for its students by implementing creative ways to continue to conduct nearly all classes by remote instruction.

NYU followed through on its commitment.  Professors continued to teach; students continued to learn.  *See, e.g.*, Ex. 1.[1]  Professors rapidly adapted; NYU held remote classes all across its 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study.  *See* Exs. 2–5.  Every day, teachers worked to deliver NYU's intellectually stimulating and creative learning environment in new and different ways, and students continued to benefit from those efforts.  Ex. 1.  And, at the end of the semester, thousands of NYU students received education credits and earned their degrees.  *See* Ex. 6.

Nevertheless, plaintiffs Jaclyn Romankow, a visiting student for one semester at NYU London, and David, her father, (the "plaintiffs") brought a putative class action against NYU that: asks this Court effectively to second guess the judgment of NYU's educators and administrators

---

[1]     "Ex." refers to the exhibits to the Declaration of Keara M. Gordon, dated August 5, 2020.

in making and implementing the decision to transition to remote learning and to bring home students in NYU's London study abroad program; argues that, in the plaintiffs' opinion, the remote learning environment to which NYU's faculty was forced to transition, and the manner in which each of their teachers then delivered that instruction over a myriad of courses, was ineffective (apparently in total); and demands the return of the plaintiffs' tuition in full.  Despite the fact that Covid-19 – not NYU – caused the need to transition to remote learning, and students continued to receive instruction and academic credits, the plaintiffs assert claims for: (1) breach of contract; (2) unjust enrichment; and (3) conversion.

Each fails, and the Complaint warrants dismissal for numerous reasons, including:

- At their core, each of the plaintiffs' claims impermissibly asks this Court to second guess NYU's educational decisions including the manner and effectiveness of the provision of educational services, which longstanding New York precedent precludes; indeed, what the plaintiffs seek would require the Court to review and assess Ms. Romankow's (and potentially the entire putative classes') course materials, syllabi, assignments, the method of teaching provided both before and after the transition to remote learning, any subsequent lessening of effectiveness (however measured), the student's input and work product, the student's subjective learning preferences, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard (whatever that may be) (*see* Section II);

- Mr. Romankow, as the parent of an adult student, does not have Article III standing to assert claims against NYU (*see* Section III.A);

- The plaintiffs lack Article III standing to assert these claims on behalf of absent class members who attended colleges, schools, or programs within NYU that Ms. Romankow did not attend.  Ms. Romankow was a visiting student who spent only one semester at NYU London.  Because each school, college, and program is different, students' experiences will differ, for example, between students at NYU's New York campus versus study abroad programs, graduate students versus undergraduates, law students versus medical students, versus engineering students, versus MBAs, versus actors, versus dancers, versus education majors, versus biology majors (*see* Section III.B);

- The plaintiffs lack Article III standing to seek injunctive relief, as they do not allege that Ms. Romankow will be taking NYU classes in the future (*see* Section III.C);

- The Complaint must be dismissed because the plaintiffs' claims are barred by the Study Abroad Travel Release Ms. Romankow agreed to upon her enrollment (*see* Section IV);

2

- The breach of contract claim must be dismissed because (1) the plaintiffs do not allege a specific promise; (2) that NYU broke in bad faith; (3) Covid-19 rendered performance impossible; and (4) the plaintiffs failed adequately to allege damages (*see* Section V);

- The unjust enrichment claim must be dismissed because: (1) it is duplicative of the other causes of action; and (2) the plaintiffs have not pled that NYU was unjustly enriched (*see* Section VI); and

- The conversion claim must be dismissed because: (1) it is duplicative of the breach of contract claim; (2) the right to in-person classes is intangible property not subject to a conversion claim; and (3) the plaintiffs did not have an ownership interest in in-person instruction (*see* Section VII).

Respectfully, the Court should dismiss the Complaint in its entirety with prejudice.

### STATEMENT OF FACTS[2]

**A.     NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees.**

NYU is an educational institution that, during the 2019-2020 school year alone, delivered higher education to over 50,000 enrolled undergraduate and graduate students.  *See* Compl. ¶ 1. NYU's academic offerings include certificate programs, accelerated programs, study abroad, exchange programs, part-time studies, full-time studies, and associate, bachelor's, post-bachelor's, master's, post-master's, or doctoral programs.  Ex. 2–5.

---

[2]     For purposes of this motion, NYU accepts the plaintiffs' allegations as true except to the extent that they are contradicted by documentary evidence.  NYU reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not).  But, the Court is not required to accept as true allegations that are contradicted by documents.  When a "complaint relies on the terms of [an] agreement," the Court "may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  The Court may consider official government documents, publicly available documents, and published websites. *See, e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) (judicial notice of "official government websites [and] governmental records") (applying Fed. R. Evid. 201).  The Court can consider materials beyond the pleadings to resolve jurisdictional questions (*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)), and on a factual challenge to jurisdiction, "evidentiary matter may be presented by affidavit or otherwise." *Architectural Body Research Found. v. Reversible Destiny Found.*, 335 F. Supp. 3d 621, 633 (S.D.N.Y. 2018) (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

These wide-ranging offerings are delivered across and through NYU's 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study.  Exs. 2–5. Many of NYU's schools and colleges have their own admissions process (*see*, *e.g.*, Exs. 7–11) and used different admissions-related materials, on different websites, which highlight the distinct aspects unique to them, which have changed over time (*see*, *e.g.*, Exs. 12–14).  NYU assesses each student's tuition and fees based on the student's circumstances, including the school within NYU, the program within that school, and the particular courses.  Compl. ¶ 24.

**B.      The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.**

On March 7, 2020, Governor Andrew Cuomo declared a State of Emergency across New York state due to a rapid increase in cases of Covid-19.  Ex. 15.  On March 11, 2020, President Donald Trump announced a suspension of travel from Europe to the U.S. that he soon thereafter expanded to include the U.K.  *See* Exs. 16–18.  According to the Complaint, Ms. Romankow was instructed to leave London, which she did on March 16, 2020.  Compl. ¶ 16.  That same day, Governor Cuomo issued an Executive Order expanding upon his prior order; he closed all schools in the state, prohibited all large gatherings, and shuttered bars and restaurants.  Exs. 19–20. Consistent with the government orders and to protect the health and safety of its students and employees, NYU announced the difficult, but essential, decision to move all classes to remote learning for the duration of the semester, following its previous announcements of a temporary transition to remote learning.  Exs. 21–23.  On March 18, 2020, the U.K. government issued an order closing schools indefinitely.  *See* Ex. 24.  On March 20, 2020, Governor Cuomo announced another Executive Order, which "ban[ned] all non-essential gatherings of individuals of any size for any reason."  Ex. 25.  On March 23, 2020, the U.K. prohibited non-essential gatherings of more than two people and closed all but essential businesses.  Exs. 26–27.

C.     **NYU Provides Certain Refunds to Students.**

After suspending in-person instruction and closing virtually all of its residence halls, NYU refunded a *pro rata* amount for the costs of housing and dining services after the campus' closure. Ex. 23.  NYU's various schools also refunded certain activity fees, following an evaluation. Ex. 28; *see* Ex. 29.  Consistent with its policy that undergraduate and graduate students who remained enrolled in courses after February 24, 2020 are not eligible for a tuition refund (*see* Exs. 30–32), and consistent with the fact that students continued to receive the benefit of their courses through remote instruction, NYU has not refunded tuition (*see* Ex. 33).

D.     **The Plaintiffs**

Ms. Romankow is a visiting student who enrolled at NYU's Tisch School of the Arts ("Tisch") London program for a semester. Ex. 34.  She and her father claim that Mr. Romankow "was responsible for and paid the tuition bill on behalf of his daughter" (*see* Compl. ¶ 7); however, when Ms. Romankow authorized her father's access to NYU's online portal to submit tuition payments on her behalf, she explicitly acknowledged that she was "still responsible for ensuring that all my accounts are paid on time and in full."  *See* Ex. 35.

The plaintiffs allege that they believe remote instruction was subpar to in-person instruction (*see* Compl. ¶ 13, 14, 36), which they claim entitles them to a refund of tuition and fees (*id.* ¶ 42).  But, they admit that NYU has already "adjusted student accounts with prorated credits for room and board."  *Id.* ¶ 38.  They claim that NYU breached an alleged contract with them, but do not articulate or attach the purported "contract," instead referencing undated pages on the NYU website promoting benefits from being in New York City, and unspecified "Campus Resources," even though Ms. Romankow never intended to study at NYU in New York, but solely in London. *Id.* ¶ 32.  They also reference statements specific to the NYU London program, including taking "theatre visits and trips to galleries and places of architectural interest," as well as "football

5

matches, musicals, comedy nights, and exhibitions" and time spent in Royal Academy of Dramatic Art ("RADA") facilities, performances of Shakespeare plays, and combat training.  *Id.* ¶¶ 33, 34.

Upon her enrollment in the NYU London program, Ms. Romankow agreed to a Study Away Travel Release document (the "Release").  *See* Ex. 36.  Ms. Romankow was prompted with and acknowledged her agreement to the Release within NYU's online portal on October 24, 2019. *See* Ex. 37.  Under the terms of the Release, Ms. Romankow waived her and her father's right to all claims against NYU relating to her participation in the study abroad program.  *See* Ex. 36. Nevertheless, they seek to represent a putative class of everyone who paid NYU any tuition for the Spring 2020 semester, or all Tisch students, or all study abroad students.  Compl. ¶ 42.

## ARGUMENT

### I.   <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which is guided by "[t]wo working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, although the Court must accept all of a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss.  *Id.* at 679.

"A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova,* 201 F.3d at 113; *see also Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (same). Courts lack subject matter jurisdiction when the plaintiff does not have Article III standing. *Schachter v. U.S. Life Ins. Co. in City of New York,* 77 F. App'x 41, 42 (2d Cir. 2003).  The plaintiff bears the burden of establishing standing.  *Morrison,* 547 F.3d at 170.

## II.     The Plaintiffs' Claims Should Be Dismissed Because The Court Should Not Intervene in Educational Decisions.

As a threshold matter, the plaintiffs' claims should be dismissed because they are premised on allegations that improperly ask the Court to evaluate whether NYU made the right decision to transition to remote learning, and then, once made, to examine whether individual faculty members failed to provide an effective education in particular courses during the period of remote instruction. "[C]ourts retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005) (finding that student failed to state a breach of contract claim) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) (affirming dismissal of breach of contract claim and noting that administrators are "better suited" to make decisions)).

New York does not recognize claims that require the Court to second guess the decisions of educators or are akin to claims "that the school breached its agreement by failing to provide an effective education," particularly where such claims would require a court to "evaluate the course of instruction" or "review the soundness of the method of teaching that has been adopted by an educational institution." *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 897 (2d Dep't 1996) (quotations omitted) (reversing trial court judgment for student). "Such inquiry would constitute a clear 'judicial displacement of complex educational determinations' that is best left to the educational community." *Id* at 898. (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868 (2d Dep't 1982)). "This public policy is grounded in the view that in matters wholly internal these institutions are peculiarly capable of making the decisions which are appropriate and necessary to their continued existence." *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1st Dep't 1985), *aff'd* 66 N.Y.2d 946 (1985); *see also*, *e.g.*, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 322 (W.D.N.Y. 2014) (dismissing claim).

Indeed, "[n]ot every dispute between a student and a university is amenable to a breach of contract claim . . . Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed . . .'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206-207 (S.D.N.Y. 1998) (dismissing claims). "[E]ven while applying contract principles, the courts have been careful to disallow claims that would involve the judiciary in reviewing the day-to-day judgments of educators." *Id.* at 209.

This longstanding line of authority is directly applicable here. In *Paynter v. New York University*, for example, the plaintiff sued for a tuition refund after NYU suspended classes on May 7, 1970 as a result of anti-war demonstrations. 319 N.Y.S.2d 893, 893 (1st Dep't 1971). The First Department reversed the trial court's decision that a refund was warranted and held that the trial court "erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year prior to the examination period." *Id.* at 894. In so doing, the Court recognized the general principle that "[p]rivate colleges and universities are governed on the principle of self-regulation, free to a large degree, from judicial restraints, and they have inherent authority to maintain order on their campuses." *Id*. The Court expressly observed that, "while in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id*.

Precisely the same result follows here, for the same reasons. The plaintiffs challenge NYU's decision to move all courses to remote instruction and allege that, in their opinion, the resulting education that each faculty member provided in each class was not as effective as it would have otherwise been. Compl. ¶ 1. Specifically, the entirety of the plaintiffs' complaint is

predicated on the assertion that there was "a decreased quality of experience and education," (*id.* ¶ 13), temporary remote learning was not "the same quality of education" (*id.* ¶ 14), "subpar in practically every aspect" (*id.* ¶ 35), and "not equivalent to the in-person education" (*id.* ¶ 36), which they allege entitles them to a refund of tuition and fees (*id.* ¶ 42).  To examine and evaluate the actual quality of the education provided, the Court would be required to review and assess Ms. Romankow's (and potentially every NYU's student's) course materials, syllabi, objectives, assignments, the method of teaching provided both before and after the transition to remote learning, its effectiveness (however measured), the student's input and work product, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior standard.  Such an analysis would be further complicated by the fact that this calculus may be different depending upon whether the course at issue is statistics versus Shakespeare, versus law, versus medicine, versus finance, versus education.  And, the Court would need to factor in the subjective desires and preferences of students, which are not uniform and many of whom learn differently.  Well-established precedent mandates finding that the Court should not wade into such day-to-day judgments of educators.  Accordingly, the plaintiffs' claims must be dismissed.

III.   **The Plaintiffs Do Not Have Article III Standing To Assert Certain Claims.**

      A.   **Mr. Romankow Lacks Standing as a Parent.**

Courts have held that parents do not have standing to assert claims against universities where their child, the student, is over the age of eighteen.  *See, e.g.*, *McCormick v. Dresdale*, 2010 WL 1740853, at *2 (D.R.I. April 28, 2010) (dismissing parents' claims); *Doe v. Univ. of the South,* 687 F. Supp. 2d 744 (E.D. Tenn. 2009) (same); *see also Suffolk Cty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984) (affirming dismissal of breach of contract claim for lack of privity).

In *University of the South*, the parents of a college student sought to assert claims against the student's school for, among other things, breach of contract and unjust enrichment.  687 F.

Supp. 2d at 749.  The Court found that for the parents "to establish standing . . . they must first be able to prove the existence of a contract or for the Court to find that the parties must have entered into an agreement which is sufficiently definite and certain so that the terms are either determined or may be implied."  *Id.* at 761.  The Court rejected the parents' contention that "the payment of tuition created a contractual or quasi-contractual relationship with the University," finding that "the 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority.'"  *Id.*  "When a child reaches the age of majority, such standing simply transfers from the parent to the child."  *Id.* (quotation omitted).

Here, similarly, Mr. Romankow does not have standing to assert claims against NYU. While he asserts that he paid tuition on behalf of his daughter, such payments are insufficient to confer standing.  *See Doe*, 687 F. Supp. 2d at 261.  Moreover, when Ms. Romankow authorized her father to have access to NYU's online portal to submit tuition payments on her behalf, she explicitly acknowledged that she was "still responsible for ensuring that all my accounts are paid on time and in full."  *See* Ex. 35.  This acknowledgment makes clear that any contract pertaining to the payment of tuition is between NYU and Ms. Romankow.  Mr. Romankow is not a party to any agreement with NYU and therefore has no recourse or standing to sue.  Even if Mr. Romankow had a contract with NYU (which he does not), he is merely a promisee, and Ms. Romankow, as a third party beneficiary of any such contract, holds the right to institute legal action against NYU for money damages.  *See Police Benev. Ass'n of New York State Police, Inc. v. New York*, 358 N.Y.S.2d 280, 284 (1974).  As a result, the Court should dismiss all claims asserted by Mr. Romankow for lack of standing.

**B.  The Plaintiffs Lack Standing to Assert Claims Relating to Colleges, Schools, and Programs In Which Ms. Romankow Was Not Enrolled.**

The plaintiffs do not have standing to assert claims related to the various schools, colleges,

and programs Ms. Romankow did not attend.  Courts hold that a named plaintiff lacks standing to assert claims on behalf of putative class members where the putative class members' claims would not raise "a set of concerns nearly identical" to those raised by the named plaintiff.  *DiMuro v. Clinique Labs. LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (summary order) (quotation omitted) (dismissing claims for lack of standing in consumer class action where products at issue had "different ingredients" and advertising thus "[e]ntirely unique evidence" would be required to assess claims pertaining to each product); *see also, e.g.*, *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon,* 775 F.3d 154, 162 (2d Cir. 2014) (affirming dismissal for lack of standing); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *14 (S.D.N.Y. Oct. 7, 2019) (dismissing claims for lack of standing).

In *Retirement Board*, for example, the Second Circuit found that a plaintiff lacked standing where its claims, including for breach of contract, "turn[ed] on very different proof" in relation to different loans being held by different trusts at the same bank.  775 F.3d at 162.  The Court held that the issue of "whether [the defendant] breached its obligations under the governing agreements . . . require[d] examining its conduct with respect to each trust" because there is "no way in which answering these questions for the trusts in which Plaintiffs invested [would] answer the same questions for the numerous trusts in which they did not invest."  *Id.*; *see also Patterson*, 2019 WL 4934834, at *14 (no standing to assert claims on behalf of absent class members who invested in funds in which the named plaintiffs did not invest).

So too here.  The plaintiffs purport to represent a class that consists not only of students in Ms. Romankow's NYU London/RADA program, but everyone who attended any program within NYU, whether it be undergraduate, graduate, or doctorate, in any discipline whatsoever, in any location.  The admissions-related materials describing these varied programs were different across

NYU's various colleges, schools, and programs, and have changed over time.  *See* Exs. 12–14.  And, the manner and method of the delivery of classes within each – much less across all – colleges, schools, and programs, varied, as did the student's subjective views of each course.

The plaintiffs base their contract claim on the representations they allege NYU made to them.  Obviously, they were not exposed to representations made across each of NYU's various disciplines, nor did any alleged contract encompass all of them.  Rather, their allegations highlight the differences between Ms. Romankow—a drama student in a study abroad program—and the rest of NYU students by arguing that drama courses were not of "the same quality of education as in-person instruction" after the move to remote learning.  Compl. ¶ 14.  Moreover, Ms. Romankow was enrolled as a visiting student for one semester at NYU for the purpose of participating in the study abroad program (*see* Ex. 34), thus the terms of any agreement she has with NYU are markedly different than those of permanent students.  NYU also provided different refunds for school- or course-based fees or equipment.  *See* Exs. 28, 29.  Thus, "whether [NYU] breached its obligations under the governing agreements . . . require[s] examining its conduct with respect to" the different admissions materials for each school, college, and program, *see Ret. Bd*., 775 F.3d at 162, and the plaintiffs do not have standing to assert claims on those other students' behalf.

### C.     The Plaintiffs Lack Standing to Seek Injunctive Relief.

The "'irreducible constitutional minimum' of standing" requires a plaintiff to plead a "'concrete and particularized injury . . . fairly traceable to the challenged conduct of the defendant.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-1548 (2016) (quotation omitted).  A plaintiff "lack[s] standing to pursue injunctive relief [if he or she is] unable to establish a 'real or immediate threat' of injury."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  "[P]ast injuries . . . [therefore]

do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [he or she] is likely to be harmed again in the future in a similar way." *Id.*

Here, Ms. Romankow has completed her semester as a visiting student and is no longer enrolled at NYU, and therefore cannot possibly suffer any harms relating to future semesters at NYU.  Accordingly, the plaintiffs do not have standing to seek injunctive relief.

**IV.**     **The Study Away Travel Release Bars the Plaintiffs' Claims.**

The Complaint must be dismissed because the Release to which Ms. Romankow agreed electronically upon her enrollment in the NYU London program bars her (and her father's) claims as a matter of law.  By agreeing to the terms of the Study Away Travel Release, Ms. Romankow agreed, among other things, that:

● "I understand that the University is not insuring or guaranteeing in any manner, my safety from personal injury or other loss or damage that may occur as a result of the Program;"

● "The University is not responsible for my losses, illnesses, injuries or disabilities or for the conditions I experience during the Program, including those that occur during University sponsored or supervised activities;" and

● "Knowing the risks and dangers associated with the program and in consideration for being permitted to participate in the Program, I also agree, to the maximum extent permitted by law . . . not to raise any claim or institute any legal action or proceeding against the University that I have ever had, now have, or may have in the future or which my *heirs, executors, administrators, or assigns* may have, or claim to have, for any cause of action that may result from or arise out of my participation in the Program or any travel related to the Program[.]"

*See* Exs. 36 (emphasis added), 37.

By agreeing to these terms,[3] Ms. Romankow waived her and her father's right to bring suit against NYU for any alleged losses from her participation in the study abroad program, including the purported losses claimed in the Complaint.  Ms. Romankow is bound by the Release.  "The

---

[3]     The fact that Ms. Romankow signed the Release serves as further evidence that any contract was between Ms. Romankow and NYU, not between Mr. Romankow and NYU.

Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, 'for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2020 WL 2907676, at *3 (S.D.N.Y. June 3, 2020) (agreement enforceable) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)).  Here, the NYU portal prompted Ms. Romankow with a pop-up message requiring her to accept the terms of the Release, which she did.  *See* Ex. 37.

Such releases are valid and enforceable.  "It is appropriate to grant a motion to dismiss on the basis of a binding release agreement where . . . the terms of the agreement are clear and unambiguous."  *2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital LLC*, 2001 WL 410074, at *6-7 (S.D.N.Y. April 23, 2001) (dismissing claims); *see Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357 (S.D.N.Y. 1999) (same).  As a result, the plaintiffs' claims should be dismissed.

## V.   __The Plaintiffs' Breach of Contract Claim Must Be Dismissed.__

The plaintiffs' breach of contract claim must be dismissed because the plaintiffs fail to allege: (1) a specific promise by NYU sufficient to establish a contract; (2) any breach of an alleged contract in bad faith; or (3) any resulting damages or harm to the plaintiffs.  Further, even if there was a contract to provide in-person instruction (which there was not), Covid-19 and the related government edicts shuttering schools and businesses rendered NYU's performance impossible.

### A.   **The Plaintiffs Have Not Identified a Specific Promise That Was Broken.**

The plaintiffs' breach of contract claim must be dismissed because the plaintiffs fail to allege a specific promise by NYU that was broken.  The implied contract between NYU and Ms. Romankow was, at most, that NYU would provide her the ability to earn academic credits in exchange for tuition payments.  *See Gally*, 22 F. Supp. 2d at 206 ("When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the

university, she will obtain the degree she seeks.").  NYU performed: NYU continued to provide Ms. Romankow with instruction and academic credits.  Thus, NYU did not breach this contract.

To the extent plaintiffs attempt to state a claim based on an implied contract arising out of the admissions materials, the claim fails.  To state a claim for breach of an implied contract against a university under New York law, "a plaintiff must identify: (1) a specific contract, (2) specified services offered or promises made, and (3) the university's failure to provide those services or keep those promises."  *Doe v. Columbia Univ.*, 2020 WL 1528545, at *5 (S.D.N.Y. Mar. 31, 2020) (dismissing breach of contract claim).  "The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student" and "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted."  *Gally*, 22 F. Supp. 2d at 207.  "[O]nly specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract."  *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010) (affirming dismissal of breach of contract claim).  General statements of policy are insufficient.  *See Anthes v. New York Univ.*, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) (dismissing claim); *Ward v. New York Univ.*, 2000 WL 1448641, at *3-4 (S.D.N.Y. Sept. 28, 2000) (same).

In *Ward*, for instance, the plaintiff sought to premise her breach of contract claims against NYU on "a number of the University's general policy statements and broad and unspecified procedures and guidelines."  2000 WL 1448641, at *4.  Initially, the Court noted that "courts should not substitute their judgments for those of the educators" and that it was "reluctant to venture into the domain of the University."  *Id.* at *3.  The Court further held that the statements

15

were insufficient in any event to serve as the basis for a breach of contract claim because they were "more akin to general statements of policy" and not "designated and discrete promises, relating to the incidents of the forthcoming education, such as the provision of a designated number of hours of instruction[.]" *Id.* (citation omitted).

Similarly, in *Cheves v. Trustees of Columbia University,* the plaintiff alleged that Columbia breached a contract with him by not permitting him on campus.  89 A.D.3d 463, 464 (1st Dep't 2011).  The First Department affirmed dismissal of the contract claim, finding that "nothing in [the Alumni Relations brochure serving as the basis of the plaintiff's claims] guarantee[d] unfettered, irrevocable access for alumni to the campus or its facilities" and therefore "the complaint fails to rely on a specific promise material to plaintiff's relationship with Columbia that has been breached." *Id.*; *see also Anthes*, 2018 WL 1737540, at *13 (dismissing breach of contract claim).

Here, similarly, the plaintiffs rely on puffery and generic statements on NYU's website as the basis for their claims.  Despite the fact that Ms. Romankow was enrolled in the London study abroad program during the Spring 2020 semester (Compl. ¶ 7), the plaintiffs point to statements about NYU's New York campus.  *Id.* ¶ 32.  As to the London Program, the Romankows point to statements about attending "the prestigious RADA facilities," "combat training," and Shakespeare.  *Id.* ¶ 34.  Like the statements in *Ward* and *Anthes*, these statements do not constitute a specific promise by NYU to provide a particular service (much less a promise to provide in-person classes), and therefore cannot serve as the basis for a breach of contract claim.  *See* 2000 WL1448641, at *4; s*ee also Andre*, 655 N.Y.S.2d at 897-99 (rejecting breach of contract claim).  In any event, as discussed below, Covid-19 and associated travel restrictions rendered it impossible for NYU to provide students with access to RADA facilities and receive "combat training" or perform Shakespeare there.  Exs. 24, 26, 27.  Accordingly, any alleged non-performance by NYU is

excused by impossibility, and the plaintiffs' breach of contract claim must be dismissed.

**B.      NYU Did Not Breach Any Contract.**

The plaintiffs also have not sufficiently alleged that NYU breached a contract and therefore the breach of contract claim must be dismissed.  *See*, *e.g.*, *Ward*, 2000 WL 1448641, at *5. "[S]tating in a conclusory manner that an agreement was breached," as the plaintiffs have done here, "does not sustain a claim of breach of contract."  *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016).

In *Ward*, the Court dismissed a breach of contract claim against NYU because "bald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim" and the plaintiff "failed to allege any facts demonstrating that defendants failed to abide by the University's regulations or procedures."  2000 WL 1448641, at *5.  Similarly, in *Doe v. Columbia University*, the Court dismissed a breach of contract claim that was "not viable because [the plaintiff] fails to make specific, non-conclusory allegations regarding how Columbia failed to comply with its disciplinary procedures."  2020 WL 1528545, at *6.

Here, as in *Ward* and *Doe v. Columbia*, the plaintiffs fail adequately to plead a breach by NYU.  They admit NYU upheld its end of the bargain: it continued to provide Ms. Romankow educational services and it awarded her academic credits through remote instruction and coursework.  *See* Compl. ¶ 26.  As a result, there is no breach of contract.  *See Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174, at *2-3 (E.D. La. Nov. 26, 2007) (rejecting breach of contract claim brought by student who had to attend classes at another school following Hurricane Katrina because he attended classes, received credits, and graduated and there was no contract "that would entitle him to a free semester of law school.").

Additionally, under NYU's refund policy, students had to withdraw from their classes by February 24, 2020 in order to receive a full tuition refund (*see* Exs. 30–32), and NYU did not

breach the terms of this policy by not providing tuition refunds *after* February 24, 2020, or by not providing tuition refunds to students who, like Ms. Romankow, *never* withdrew from their classes. NYU did issue refunds to students for certain services that could not be provided in light of Covid-19, including for "study away" fees and costs.  *See* Exs. 28, 29.

Moreover, the breach of contract claim must be dismissed because the plaintiffs do not allege (nor could they plausibly allege) that NYU acted in bad faith.  To the extent an implied contract exists between students and a university, "[t]he essence of the implied contract is that an academic institution must act in good faith in its dealings with its students."  *Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.*, 49 N.Y.2d 408, 414 (Ct. App. 1980).  Thus, "[b]reach of contract claims brought by students against universities are 'subject to judicial review only to determine whether the defendants abided by their own rules and whether they have acted in good faith or their action was arbitrary or irrational.'"  *Rodriguez v. New York Univ.*, 2007 WL 117775, at *5 (S.D.N.Y. Jan. 16, 2007) (dismissing claims) (quoting *Babiker v. Ross Univ. School of Med.*, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd* 86 Fed. App'x 457 (2d Cir. 2004)).  Accordingly, courts dismiss breach of contract claims where there is no allegation that the university acted in bad faith.  *See*, *e.g.*, *Ward*, 2000 WL 1448641, at *5 (dismissing claim where there was no evidence that defendants "acted in bad faith, arbitrarily or irrationally"); *Olsson*, 49 N.Y.2d at 414 (dismissing claim where college "amply fulfilled its obligation to act in good faith").

Here, the plaintiffs do not establish that NYU acted in bad faith to breach any applicable contract.  While the plaintiffs premise their claims on statements about resources and services in New York City (*see* Compl. ¶ 32), Ms. Romankow never expected to study in New York during the Spring 2020 semester, but in London, so these are irrelevant.  As to the plaintiffs' claim that NYU breached a purported contract by failing to provide physical access to the NYU London

RADA program, such as physical access to the "prestigious RADA facilities" and "London's football matches, musicals, comedy nights, and exhibitions" (*see* Compl. ¶¶ 34, 35), as discussed below, NYU did not in bad faith prevent students' ability to access the RADA facilities or attend football matches or the theater; rather, the growing threat of Covid-19, international travel restrictions, and government edicts barring in-person events and large gatherings did.  Exs. 24, 26, 27.  Indeed, the plaintiffs  acknowledge that NYU "did not have a choice in cancelling in-person classes."  *Id.* ¶ 30.  As a result, there is no colorable allegation that NYU acted in bad faith to breach any purported promise and the breach of contract claim must be dismissed.

###        C.        Covid-19 Rendered Performance of the Alleged Contract Impossible.

Even if the plaintiffs could make out a claim for breach of contract (which they cannot), Covid-19 and resulting government orders rendered NYU's performance impossible. Impossibility excuses performance where the "destruction of the subject matter of the contract or the means of performance makes performance objectively impossible" due to "an unanticipated event that could not have been foreseen or guarded against in the contract." *Kolodin v. Valenti*, 115 A.D.3d 197, 200 (1st Dep't 2014); *see also Organizacion JD LTDA v. U.S. Dep't of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (affirming dismissal); *L. N. Jackson & Co. v. Royal Norwegian Gov't*, 177 F.2d 694 (2d Cir. 1949) (reversing judgment on breach of contract claim where "performance [was] subsequently prohibited by an administrative order made with due authority by an officer of the United States").

In *Organizacion JD LTDA*, for example, the plaintiffs sued two banks after the government seized money transfers intended for the plaintiffs on the basis that the transfers involved proceeds related to drug trafficking.  18 F.3d at 93.  The plaintiffs asserted several causes of action, including breach of contract.  *Id.* at 95.  The Second Circuit affirmed the District Court's dismissal of the breach of contract claims on impossibility grounds, holding that "the private intermediary banks

19

cannot be subject to a damage action because the intervening government actions in ordering the seizures of the [transfers] rendered any enforceable contract impossible to perform." *Id.*; *see also Kolodin*, 115 A.D. at 199-200 (finding impossibility where court order prevented performance).

Here, similarly, Covid-19 and the resulting government orders, not any bad faith act by NYU, destroyed the means of NYU's performance with respect to allegations that she was prevented from: immersing herself in London's "bustling and vibrant" life; attending trips to the theater, galleries, and "and places of architectural interest;" accessing RADA, combat training, a library, "football matches, musicals, comedy nights, and exhibitions" and other travel. Compl. ¶ 33. Leaving aside that NYU does not control whether or not London events such as musicals occur, Covid-19 and associated government orders limiting public gatherings, closing museums and galleries, and canceling football matches and theater performances rendered performance impossible. Accordingly, the plaintiffs' breach of contract claims should be dismissed.

### D.   The Plaintiffs Failed Adequately to Allege Damages.

The plaintiffs' breach of contract claim also must be dismissed because they fail sufficiently to allege damages. To state a claim for breach of contract, a plaintiff must plead that the defendant breached its contract and the plaintiff suffered damages as a result of the defendant's alleged breach. *See Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2 (S.D.N.Y. Dec. 15, 2016). A claim must be dismissed where the plaintiff does not allege that he "suffered cognizable damages as required by New York law." *See id.* at *2-3 (dismissing breach of contract claim). Since Ms. Romankow in fact received educational credits in exchange for tuition paid (*see* Compl. ¶ 26), the plaintiffs have not and cannot plead that they suffered any damages.

The plaintiffs also cannot claim they received no benefit from the period of remote instruction – as Ms. Romankow did earn credits – yet they ask for 100 percent of her tuition back. In reality, any claim that the fact that Covid-19 required some period of the semester's instruction

to be remote devalued Ms. Romankow's education is too speculative under New York law.  To ascertain liability and damages, the Court would have to examine the method and effectiveness of each course of instruction by each professor prior to Covid-19 and then after, assess the value of in-person instruction as compared to remote instruction as perceived by each of the named plaintiffs, on a course-by-course basis, and calculate the percentage of tuition (if any) that should be refunded on a course-by-course basis.  *See Mihalakis v. Cabrini Med. Ctr.* 151 A.D.2d 345, 346 (1st Dep't 1989) (damages too speculative to support a fraud claim); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 93 (S.D.N.Y. 2012) (allegations that plaintiff was damaged by "a general decline in the value" was "insufficient" damages for breach of contract claim).  Because the plaintiffs fail to allege any non-speculative way to do this analysis, they fail to allege any damages to support the claim for breach of contract and the claim must be dismissed.

**VI.    The Plaintiffs' Unjust Enrichment Claim Must Be Dismissed.**

   **A.    The Unjust Enrichment Claim Must Be Dismissed As Duplicative.**

   A claim for unjust enrichment must be dismissed where it is "merely duplicative of [the] other causes of action."  *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016). Unjust enrichment "is not a catchall cause of action" and "is not available where it simply duplicates, or replaces, a conventional tort of contract claim." *Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at \*11 (S.D.N.Y. Jul. 20, 2016) (dismissing unjust enrichment claim) (quotations omitted).  Courts dismiss unjust enrichment claims as duplicative where they are "based on the same factual allegations" as a contract claim.  *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018).

   Moreover, courts have held that students may not assert unjust enrichment claims against universities where the relationship is governed by a contract.  *See*, *e.g.*, *Yalincak v. New York Univ.*, 2009 10714654, at \*14 (D. Conn. Sept. 3, 2009) (applying New York law).  In *Yalincak*, the

plaintiff, a former NYU student, asserted multiple claims against NYU, including for breach of contract and unjust enrichment.  *See id.* at *9-10, *14.  The Court dismissed the unjust enrichment claim, finding that "[a]s plaintiff acknowledges, he and NYU had an implied contract . . . governed by the university's bulletins and regulations.  Because Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment."  *Id.* (citation omitted).

The same result is compelled here.  The plaintiffs' unjust enrichment claim is premised on the same facts and seeks the same remedy as their breach of contract claim.  The plaintiffs' unjust enrichment claims are almost verbatim restatements of their breach of contract allegations:

| Unjust Enrichment Allegations | Breach of Contract Allegations |
|---|---|
| "Plaintiffs and the Class Members directly conferred non-gratuitous benefits upon Defendant, i.e., monetary payments for tuition, fees, and/or room and board, so that Plaintiffs and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities." (Compl. ¶ 63). | "Plaintiffs and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services." (Compl. ¶ 57). |

The plaintiffs' unjust enrichment claim must be dismissed.

**B.  NYU Was Not Unjustly Enriched.**

To state a claim for unjust enrichment under New York law, "a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity and good conscience require the defendant to make restitution." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014).  A mere allegation that a defendant "received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment."  *Samad v. Goldberg*, 2016 WL 6678923, at *9 (S.D.N.Y. Nov. 14. 2016) (quoting *Goel v. Ramachandran*, 111 A.D.3d 783, 791 (2d Dep't 2013)).  Instead, a plaintiff must establish that under the circumstances "it is against equity and good conscience to permit the defendant to retain what is sought to be recovered," *Goel*,

111 A.D.3d at 791 (quotation omitted), such as through allegations that there was "some mistake or deception practiced upon" the plaintiff by the defendant. *Id.* at 792 (dismissing unjust enrichment claim); *see also*, *e.g.*, *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016) (dismissing unjust enrichment claim).

Here, there are no allegations of mistake or deception. NYU did not deceive the plaintiffs into paying tuition or fees knowing that months or years later an unprecedented global pandemic followed by governmental orders would disrupt international travel and force NYU to take the unprecedented action to transition to remote instruction, and the plaintiffs did not mistakenly provide tuition payments to NYU under some false impression of what would happen in this scenario. Instead, the plaintiffs paid tuition and fees to NYU in exchange for educational services and credits, which NYU provided. As such, if NYU "were required to reimburse plaintiff[s] for [Ms. Romankow's] tuition payments [they] made, plaintiff[s] would be unjustly enriched as a result." *See Roe*, 2007 WL 4219174, at \*3 (rejecting unjust enrichment claim).

Where, as here, the plaintiffs "receive[d] the benefits of the services defendants provided," the "plaintiff[s] do[] not have an equitable claim to return of the sums paid for such services." *Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958, 958 (4th Dep't 1990); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002) (rejecting unjust enrichment claim). And, NYU refunded fees associated with certain services that could not be provided in light of Covid-19. *See* Exs. 28, 29. Accordingly, the unjust enrichment claim must be dismissed.

**VII.   <u>The Plaintiffs' Conversion Claim Must Be Dismissed</u>.**

### A.      The Conversion Claim Must Be Dismissed As Duplicative.

The plaintiffs' conversion claim fails as a matter of law because it is entirely duplicative of the breach of contract claim. "[A]n action for conversion cannot lie where damages are merely

sought for breach of contract." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) (dismissing conversion claim); *see also Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, 2009 WL 1110783 at, *3 (S.D.N.Y. Apr. 21, 2009) (dismissing conversion claim; "[I]t is settled . . . that a claim of conversion cannot be predicated on a mere breach of contract.") (quotation omitted). Instead, "[w]here a conversion claim is grounded in a contractual dispute, the plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *OTG Brands, LLC v. Walgreen Co.*, 2015 WL 1499559, at *9 (S.D.N.Y. Mar. 31, 2015) (quotation omitted) (dismissing conversion claim).

Here, the plaintiffs' conversion claim is premised on the same allegations as the breach of contract claim. Moreover, the plaintiffs do not and cannot include any allegations to suggest any unlawful or wrongful conduct by NYU beyond a purported breach of NYU's alleged contract with plaintiffs. The plaintiffs submitted tuition payments to NYU, and in return NYU provided educational services and credits. *See Armored Group*, 2009 WL 1110783, at *3 (dismissing conversion claim). It would have been illegal and unsafe for NYU to require students to remain in London on campus to earn academic credits in defiance of governmental orders. Because the conversion claim is premised entirely on an alleged breach of contract, it must be dismissed.

**B.     The Plaintiffs Fail to State a Claim for Conversion.**

"To withstand a motion to dismiss in a conversion claim, a plaintiff must allege: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question[.]" *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (quotation omitted). Here, the plaintiffs do not, and cannot, allege that the right to on-campus or in-person classes is property subject to a conversion claim, nor that the plaintiff(s) had ownership or possession over in-person classes.

24

   1.   **The Right To In-Person Classes Is Intangible Property Not Subject to a Conversion Claim.**

   The conversion claim must be dismissed because "in-person education" (Compl. ¶ 71) is not tangible property and therefore not the proper subject of a conversion claim.  The "conversion of intangible property is not actionable under New York law." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) (dismissing claim).  Tangible items that are the proper subject of conversion claim are some form of actual property, not "indefinite, intangible, and incorporeal species of property." *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 864 (4th Dep't 1987) (dismissing claim); *see also Zirvi v. Flatley*, 433 F. Supp. 3d 448, 466 (S.D.N.Y. 2020) (same).  Because in-person classes are not "tangible," the plaintiffs' conversion claim must be dismissed.

   2.   **The Plaintiffs Had No Ownership Interest in In-Person Classes.**

   Finally, the conversion claim must be dismissed because the plaintiffs have failed to allege any facts establishing an ownership interest in in-person classes.  "Conversion is the exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession." *Citadel Mgmt.*, 123 F. Supp. 2d at 147.  Thus, "a plaintiff must allege" that the "plaintiff had ownership, possession or control over the property before its conversion." *Kirschner*, 648 F. Supp. 2d at 540; *see also Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003); *OTG Brands*, 2015 WL 1499559, at *9-10 (dismissing conversion claim).

   Here, the plaintiffs point to no evidence indicating an entitlement to classes conducted solely through in-person instruction.  Accordingly, the conversion claim must be dismissed.

## CONCLUSION

   For the foregoing reasons, NYU's Motion to Dismiss should be granted, and the Complaint should be dismissed with prejudice.

Dated: August 5, 2020                         Respectfully submitted,

**DLA PIPER LLP (US)**


  _/s/ Keara M. Gordon_____
Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am one of the attorneys for the defendant in this action and that on August 5, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

/s/ *Keara M. Gordon*
Keara M. Gordon