## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICTY OF NEW YORK

| | |
|---|---|
| DAVID ROMANKOW and JACLYN ROMANKOW, individually and on behalf of all others similarly situated,<br><br>                       Plaintiffs,<br><br>    v.<br><br>NEW YORK UNIVERSITY,<br><br>                   Defendant. | Case No. 1:20-cv-04616-GBD<br><br>**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs, David Romankow and Jaclyn Romankow, individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendant New York University ("NYU"), based upon personal knowledge as to their own actions and based upon the investigation of counsel regarding all other matters, complain as follows:

### NATURE OF ACTION

1.      This Amended Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19. Social distancing, shelter-in-place orders, and efforts to "flatten the curve" prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campuses, Defendant continues to charge for tuition, fees, and/or room and board in full, continuing to reap the financial benefit of millions of dollars from students as if nothing has changed. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and

dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiffs and the Class Members a lesser product: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiffs and the Class Members did not bargain for such an experience.

3.    On March 9, 2020, NYU, through a news release, announced that because of the global COVID-19 pandemic, all in-person classes would be suspended beginning March 11, 2020. NYU's announcement informed students that beginning March 11, 2020, classes would be held via remote online classes. Online classes were to continue through March 27, 2020.[1]

4.    On March 12, 2020, NYU informed students that "[w]e do not know when in-person classes will resume," and stated that "none of us should contemplate recommencing in-person classes before April 19."[2]

5.    On March 16, 2020, NYU announced that it would be closing its residence halls and holding classes remotely through the end of the semester.[3] Students were instructed to be out of the residence halls by March 22, but preferably within 48 hours. Students were directed home for the remainder of the semester.

6.    NYU has not held any in-person classes since March 10, 2020. Classes have

---

[1] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/important-new-coronavirus-related-measures-and-restrictions-and-possible-future-steps.html
[2] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/a-message-from-president-andrew-hamilton.html
[3] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/update-on-covid-19.html

only been offered in an online format, with no in-person instruction.

7.      Despite transitioning to online-only instruction and closing its  campuses, NYU continued to charge full tuition and fees for the Spring 2020 semester.  NYU did so despite students' complete inability to continue school as normal, occupy campus  buildings and dormitories, or avail themselves of school programs and events.  While students  enrolled and paid Defendant for a robust academic experience, Defendant instead offers  Plaintiffs and the Class Members something far less: a limited online experience on Zoom, void of in-person faculty and peer interaction, separated from program  resources, and barred from facilities vital to study. Students have been deprived of the  opportunity for collaborative learning and in-person dialogue, feedback, and critique.   Plaintiff, students and the Class Members did not bargain for such an experience.

8.      NYU representatives have recognized the online courses provided were not the same as the in-person courses students enrolled for.  For example, NYU Tisch Dean Allyson Green conceded in an  email and video message to students that online-only instruction will not be the same: "Will  remote instruction be the same as what we had planned for you when you started this year, this  semester?  No.  It will be different."[4]

9.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law.  For some students and families, Defendant denies refunds based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now given that unemployment is at record levels.

---

[4] *See* https://vimeo.com/399761232/203923fbd0.

10.     As a result, Defendant's actions have financially damaged Plaintiffs and the Class Members. Plaintiffs bring this action because Plaintiffs and the Class Members did not receive the full-value of the services paid and did not receive the benefits of in-person instruction. They have also lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than New York, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[5]

12.     Venue is appropriate in this District because Defendant is located within the

---

[5] About 33.3% of the students attending New York University come from within New York. https://www.collegefactual.com/colleges/new-york-university/student-life/diversity/.

Southern District of New York. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

## PARTIES

13.     Plaintiffs David Romankow and Jaclyn Romankow are residents and citizens of the State of New Jersey.  Plaintiff Jaclyn Romankow was enrolled as a full-time undergraduate student for the Spring 2020 academic term at Defendant's NYU London program.  Specifically, Jaclyn was enrolled in NYU's Tisch School of Arts London program, which is offered in collaboration with the Royal Academy of Dramatic Art (RADA).  Plaintiff David Romankow was responsible for and paid the tuition bill on behalf of his daughter, Jaclyn.  Plaintiffs are in good financial standing with Defendant, having paid in whole or in combination tuition, fees and costs assessed and demanded by Defendant for the Spring 2020 term. Plaintiffs paid Defendant for opportunities and services that Jaclyn will not receive, including on- campus education, facilities, services, and activities.

14.     While Jaclyn could have obtained her degree online, she specifically enrolled at NYU's London program to obtain the full experience of overseas, live, in-person courses and direct interactions with instructors and students, facilitated by small class sizes.

15.     Jaclyn began classes in London on February 3, 2020 and the intended last day of class was May 22, 2020.

16.     Jaclyn participated in classes/events in London from February 3, 2020 to March 10, 2020. Because of the coronavirus concerns, during the week of March 13, Jaclyn was instructed by NYU to leave London. She returned to New Jersey on March 16, 2020.

17.     Jaclyn then had a hiatus in classes from March 11 to March 20. During this time,

everyone was returning home due to the corona outbreak, and professors at RADA were trying to figure out how to proceed. No RADA classes occurred during this time.

18.     On March 23, RADA professors announced that the London abroad students would only be receiving online (teleconference) classes going forward.

19.     With Defendant's campus closure and transition to an online-only educational experience, Jaclyn suffered a decreased quality of experience and education, and lost access to important university facilities and experiences that were bargained for by selecting in-person instruction.

20.     Jaclyn found the transition to online learning to be disruptive and ineffective with no oversight or accountability to ensure the same quality of education as in-person instruction. For example:

- Jaclyn's "Shakespeare In Performance" class was intended to consist of sessions throughout the semester, each consisting of approximately 9 hours of in-class rehearsal time and culminating in a public on-stage performance in a RADA theater. Instead, this class consisted of 1 online rehearsal (5 hours), and 5 sessions (6 hours each) of video recording scene work between Jaclyn and her fellow classmates. There was no public performance, although they did make the final video available to the public.

- Jaclyn's "Shakespeare – Our Contemporary" class was intended to consist of 10 sessions throughout the semester, each consisting of 1.5 hours to 3 hours of instruction. This class would culminate in a final performance by Jaclyn and her fellow classmates. Instead, this class was completely reconfigured, and consisted of the following: A. One online session with professors and

students in attendance (2 hours); B. Each student created and submitted a 10-minute video analysis of a Shakespearean play; C. A final online recap class with professors and students in attendance (1 hour).

- Jaclyn's "Sonnets" class and "Speech Into Speeches" class were seriously degraded. For these classes in London, Jaclyn participated in 1.5 hour in person sessions (twice a week) with professors and students. After returning to the United States, many of these sessions were reduced to 15-minute, one-on-one online sessions (once a week) between Jaclyn and a professor.

- As stated in the FACTS section below, the London Program promised that Jaclyn would receive stage combat training and a three-year certification from the British Academy of Stage and Screen Combat. Jaclyn began this training in London, but after returning to the United States, the training was discontinued, and no certification was granted.

21.    Jaclyn lost the use of important facilities for her studies, including study spaces, university libraries, lounges, the dining halls, and performing arts centers. Jaclyn also lost access to her peers, which was a significant component in choosing an in-person academic experience, particularly one with a focus on performing arts.

22.    Defendant NYU is a private institute of higher education, with a principal place of business located at 70 Washington Square South, New York, New York 10012. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiffs and the Class Members.

## FACTS

**A.    Background**

23.    Founded in 1831, NYU is among the largest private universities in the United States and has a current enrollment of approximately 50,000 students across a variety of undergraduate and graduate areas of study.

24.    For the fiscal year ending August 31, 2019, NYU's endowment had an approximate value of $4.3 billion. NYU also reported operating revenues and other support of approximately $3.378 billion, which included $1.91 billion in revenue from tuition and fees along with another $341 million in student housing and dining.[6]

25.    The value of NYU's Endowment has increased by approximately 7.7% per year over the past 15 years.[7]

26.    Additionally, NYU reports $6 billion in fundraising and the "Campaign for NYU"—which concluded in 2008 and raised over $3 billion—was the largest fundraising campaign in U.S. higher education at the time, raising the equivalent of "more than $1 million per day, seven days per week, for the entire seven-year period of the campaign."[8]

27.    While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant does not.

28.    Rather, a significant focus of Defendant's efforts to obtain and recruit students

---

[6]https://www.nyu.edu/content/dam/nyu/facultyGovernance/documents/Fiscal%202019%20Operating.Capital%20Plan.pdf

[7] *Id.*

[8] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president-emeritus/accomplishments/development--fundraising-and-finances.html.

pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

29.     Defendant markets the NYU on-campus experience as a benefit of enrollment on  the NYU website:



30.     In its advertising soliciting new students to attend the university, NYU specifically advertises its location "in the heart of New York City" as a major reason to enroll.[9]  NYU  invites students to "[l]earn in the heart of one of the world's most inspiring and influential cities.  NYU's founding campus offers a vast selection of majors and cross-school minors."[10]

31.     As Defendant notes: "The core of New York University is the academic enterprise. The best students and faculty are drawn to the University by the allure of being part

---

[9] https://www.nyu.edu/admissions.html
[10] https://www.nyu.edu/admissions/undergraduate-admissions.html

of a compelling intellectual and creative enterprise—a community of scholars characterized by collaboration, innovation, and incandescent teaching.  NYU students get the experience of attending a truly global university, anchored in New York City but with nodes throughout the world.  Learning opportunities present themselves both in and out of the classroom, befitting an institution that is and always has been 'in and of the city.'"[11]

32.    NYU also recognizes that attending lectures and submitting assignments are not the only aspect of a university; rather, "[u]niversity life at NYU is supplemented with a variety of resources and services provided by the University."[12]

33.    And as explained in NYU's video "Meet NYU":

Student:  The campus experience at NYU is very unique.

Josh:  A lot of people think NYU doesn't really have a campus but it's a huge misconception, NYU really does have a concentrated campus within the city.

Meredith: It's where we go to school, where we live, where we hang out, where we have our clubs; it's where you find students and geographically that's right around Washington Square Park.

Remy:  Washington Square Park means a lot to me. When I first came to NYU after I moved into my dorm, one of the first things I did was just start walking around and I walked right through Washington Square Park and I immediately felt like I was home.

John:  This is like our quad for the University and it's a great place to meet up with friends and classmates, and most of our classroom buildings are located just right around the square.[13]

34.    NYU also underscores the importance of its world-renowned campus facilities to the student experience, including but not limited to the Bobst Library ("a central hub on

---

[11] https://www.nyu.edu/academics.html.
[12] https://www.nyu.edu/life/campus-resources.html.
[13] https://youtu.be/GxqR6p8r6z0.

campus for all students," with "the lower levels of the library are actually open 24 hours"

where students "have so many other students sitting by you, studying, engaging, discussing

with other people"), the Kimmel Center ("a center where every student has the chance to just

come in and do something that isn't academic per se and its really just nine floors of

socialization"), and the Skirball Center for Performing Arts ("the largest theatre space south

of Times Square" and the home to "amazing productions").[14]

35.     NYU makes specific representations to students' parents, like Mr.

Romankow, advertising in-person and on-campus benefits:

> We get it; we're parents too. But don't worry, Mom and Dad:
> Your son or daughter will be in great hands at NYU. And it all
> starts in the classroom. We're the largest independent research
> university in the United States, featuring world-class academics,
> faculty, and resources. Our two New York City campuses —
> Greenwich Village and Downtown Brooklyn — are located in
> culturally diverse, safe, and exciting neighborhoods.[15]

36.     NYU also boasts the school's class size in promotional materials, emphasizing a

10:1 student-to-faculty ratio at the New York City campus.[16]

37.     To obtain such advanced facilities and in-person educational opportunities and

activities, Plaintiffs and the Class Members pay, in whole or in part, substantial tuition and

fees.

38.     Defendant markets two distinct services to prospective students. On the one

hand, it offers fully online classes for a limited number of degree programs. NYU dedicates

an entire section of its website to these programs, called "NYU Online."[17] However, a review

of that portion of NYU's webpage makes clear that NYU's online offerings pale in

---

[14] *Id.*
[15] https://www.nyu.edu/admissions/undergraduate-admissions/parents.html
[16] https://www.nyu.edu/admissions/undergraduate-admissions/nyu-facts.html
[17] *See* https://www.nyu.edu/academics/nyu-online.html

comparison to its robust in-person offerings.

39.     Defendant juxtaposes the online experience against the in-person experience on  its website and in marketing materials, clearly distinguishing the two services.

40.     Students in many of the on-campus schools and programs are subject to strict personal attendance requirements, as set forth in various departmental policies and handbooks.   Defendant requires, and students accept, that students in the on-campus schools are required to physically  attend their classes on campus.

41.     NYU is among the nation's most expensive universities.  As referenced above, for the 2019-2020 academic year, NYU estimated that the total cost of  attendance for undergraduate students was $76,614, including $53,310 for tuition and mandatory  fees.  The total cost of a year's tuition at NYU exceeds the median household income in the  United States for 2018, and nearly meets the median household income in the United States for  2019. NYU justifies its high costs by touting the vitality of its "top-ranked academic programs" which includes educational experience, programs, access to facilities, and services.[18]

42.     Spring Semester 2020 classes at NYU began on or about January 27, 2020. Final exams for the semester were scheduled to take place between May 13, 2020 and May 19, 2020.[19]

43.     Plaintiffs and Class members paid the cost of tuition for the spring semester 2020, as well as associated fees and costs.

44.     Fees paid by or on behalf of NYU students vary based on program of study.

45.     Examples of approximate tuition costs at NYU for the Spring Semester 2020

---

[18] https://www.nyu.edu/about.html
[19] https://www.nyu.edu/content/dam/nyu/registrar/documents/ClassroomScheduling/FinalExamSchedules/1204Spring2020/WSQ%20-%20Spring%202020%20Finals%20Grid.pdf

are  as follows:

- Tisch School of the Arts, 12-18 credits: $27,964.00 (plus $1,312.00 in  fees)
- College of Arts and Science, 12-18 credits: $25,342.00 (plus $1,312.00 in fees)
- Faculty of Arts and Science – Liberal Studies Program, 12-18 credits: $25,342.00 (plus $1,312.00 in fees)
- Gallatin School of Individualized Study, 12-18 credits: $25,342.00 (plus $1,312.00 in fees)
- Leonard N. Stern School of Business, 12-18 credits: $25,641.00 (plus $1,312.00 in fees)
- Rory Meyers College of Nursing, 12-18 credits: $25,342.00 (plus $1,312.00 in fees)
- Silver School of Social Work, 12-18 credits: $25,342.00 (plus $1,312.00  in fees)
- Steinhardt School of Culture, Education, and Human Development, 12-18 credits: $25,342.00 (plus $1,312.00 in fees)
- Tandon School of Engineering, 12-18 credits: $25,342.00 (plus $1,074.00 in fees)
- College of Dentistry (Dental Hygiene, Dental Health, Dental Hygiene Fast Track):  approximately $25,342.00 (plus approximately $1,312.00 in fees)
- College of Dentistry (DDS): $41,004.00 (plus $1,338.00 in fees)
- College of Dentistry (International): $42,753.00 (plus $1,338.00 in fees)
- College of Dentistry (International Fellows): $15,857.00 (plus $1,338.00 in fees)
- College of Dentistry (Endo, Ortho, Peds): $41,004.00 (plus $1,338.00 in fees)
- College of Dentistry (MS - Clinical Research & Biomaterials): $1,858.00 per credit plus $509.00 per credit in fees
- College of Dentistry (Perio, Prosth): $26,285.00 (plus $1,338.00 in fees)
- School of Law (J.D. Program/LL.M. Program):  $33,018.00 (plus
- $1,338.00 in fees)
- School of Law (J.S.D., MSL and Certificate Program): $2,752.00 per unit and $748.00 in fees per unit
- Langone School of Medicine: $28,136.00 (plus $1,975.00 in fees)
- Long Island School of Medicine: $27,509.00 (plus $1,520.00 in fees)
- Graduate School of Arts and Science: $1,856 per credit and $509 in fees per unit
- Graduate, Center for Urban Science and Progress: $1,856 per unit and
- $509 in fees per unit
- Graduate, Gallatin School of Individualized Study: $1,866.00 per unit and
- $509 in fees per unit
- Graduate, Institute of Fine Arts (Ph. D), 8 to 14 credits:  $22,695.00 (and
- $1,338.00 in fees)
- Graduate, Institute of Fine Arts (MA Part-Time): $1,890.00 per unit and

- $509 in fees per unit
- Graduate, Institute of Fine Arts (Conservation Certificate): $21,751.00 (and $1,338.00 in fees)
- Graduate, Institute of Fine Arts (MA Full-Time): $18,914.00 (and $1,338.00 in fees)

46.     For instance, Plaintiffs paid a total of $36,196.00 for Jaclyn's spring semester 2020.

47.     NYU's Spring Semester began with the first day of classes on or about January 27, 2020.

48.     Spring Semester 2020 was scheduled to conclude with the last day of examinations on or about May 19, 2020.

49.     On December 31, 2019, authorities in Wuhan, China confirmed that  health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days  later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

50.     By January 21, 2020 officials in the United States were confirming the first known domestic infections of COVID-19.

51.     Due to an influx thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 a "public health emergency of international concern."

52.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

53.     On March 9, 2020, NYU, through a news release, announced that because of the global COVID-19 pandemic, all in-person classes would be suspended beginning March 11, 2020. The announcement informed students that beginning March 11, 2020, classes

would instead be held remotely through online formats. Online classes were to continue through March 27, 2020.[20]

54.    On March 10, 2020 in a message to students, NYU's President Andrew Hamilton highlighted the differences in online learning versus in-person educational experiences:

> This was not the spring semester we envisioned for you; I am sure it is not the one you foresaw for yourself. The vibrancy of the classroom experience and the energy of campus life are important parts of the college experience. We continue to hope that conditions will allow us to resume in-person classes after March 27, though developments make that increasingly doubtful.
>
> Like other universities that have made similar decisions in recent days, NYU has never tried moving its entire curriculum to remotely-held classes. We are fortunate, after a fashion, to be able to avail ourselves of NYU Shanghai's experience, which has been positive. It's not the same as being in class together, but our colleagues in Shanghai tell us that the heart of the educational process—the exchange of ideas and discourse between class members—still succeeds in this format.[21]

55.    On March 12, 2020, NYU informed students that "[w]e do not know when in-person classes will resume," but stated that "none of us should contemplate recommencing in-person classes before April 19."[22]

56.    On March 16, 2020, NYU announced that it would be closing residence halls and holding classes remotely through the end of the semester. Students were required to be out of the residence halls by March 22, but preferably within 48 hours. Students were directed

---

[20] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/important-new-coronavirus-related-measures-and-restrictions-and-possible-future-steps.html

[21] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/a-message-to-nyu-students-from-president-andrew-hamilton.html

[22] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/a-message-from-president-andrew-hamilton.html

home for the remainder of the semester.[23]

57.   NYU has not held any in-person classes since March 10, 2020. Classes that have continued have only been offered in an online format, with no in-person instruction.

58.   Though the reasons for such closures are justified, the fact remains that closures and cancellations present significant loss to Plaintiffs and the Class Members. NYU's president stated: "[n]othing quite replaces being in class with one's students . . . ."[24].

59.   NYU students have described the loss they experienced as a result of the pandemic and NYU's policies in response to it.  In an opinion piece published in the Washington Square News, NYU's  independent student newspaper, one student discussed NYU's attempt "to justify the university's  failure to reimburse tuition and financially accommodate students despite its sizable  endowment."  The student stated that "NYU is not being transparent about its financial assets nor   its ability to meet the needs of its student body."[25]  In summarizing the student experience at  NYU, the student wrote:

> In its mission statement, NYU prides itself for being "one of the most networked and extensive worldwide platforms for learning, teaching, researching, building knowledge, and inventing new ways to meet humanity's challenges." Being a leader in global education that provides students with material access to resources worldwide is an essential part of the university's reputation.
>
> Now, having transitioned to remote instruction entirely, students have lost  access to these "networked and extensive worldwide platforms" that the university spends billions of dollars to guarantee. And while NYU flaunts "meet[ing] humanity's challenges," it fails, in a moment of extreme crisis, to meet the challenges of its own student body. After evicting students from its campuses, the university capped emergency aid at $500 and refused to issue tuition

[23] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/update-on-covid-19.html
[24] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/a-letter-to-parents-from-nyu-president-andrew-hamilton.html.
[25] https://nyunews.com/opinion/2020/05/07/nyu-endowment-coronavirus-tuition/.

refunds for the spring semester. All of the benefits the university offers that justify its bloated tuition such as being located in New York City, having "a rich environment," study-abroad programs, access to large libraries and on-campus facilities, etc. have been lost.

NYU claims that it "provides a rigorous, demanding education." It also claims that student success is "an ethos and an office." Yet the prospects of student success are dwindling, especially as students become increasingly disillusioned with remote instruction. On multiple levels, the university is not doing enough to academically support its students nor live up to its academic mission.[26]

60.     In another opinion piece published in Washington Square News, the paper's editorial board as a whole took aim at NYU's tuition reimbursement policies and called for student refunds, taking aim at the drastic reduction in quality online-only classes would entail and Defendant's unaccountability:[27]

This reduction in quality isn't only limited to programs that rely on hands-on interaction. A 2017 report from the Brookings Institution found that those who take online courses "perform substantially worse than students in traditional in-person courses and that experience in these online courses impact performance in future classes and their likelihood of dropping out of college as well." A 2019 study from Kent State University found that this issue mainly stems from the fact that students engage in non-course related activities during class. Overall, online classes fail to reach the same standards that are normally achieved in in-person classes.

*So, in the transition from in-person to online classes, why is the university still charging students normal tuition when it is obviously providing a lower quality of education?*

NYU argues that the university simply loses too much money. In her email to Tisch students on March 22, Tisch Dean Allyson Green wrote that "having to switch to remote learning in the midst of a global pandemic in two weeks is not revenue making in the slightest," and that the school is losing much more due to the continued payment and maintenance of its facilities. It can be assumed that this is the position of the university as a whole as well. Both President Hamilton and Vice

---

[26] *Id.*
[27] https://nyunews.com/opinion/2020/03/30/nyu-tisch-tuition-refund-coronavirus-covid

President of Student Affairs Marc Wais didn't mention the subject in their letters to the student body, which were sent March 16 and March 17, respectively.

The underlying problem with the university and its reasoning is that students and the rest of the NYU community have no choice but to take the administration's word, since there is little to no transparency with the university. For example, when Dean Green says that Tisch and the university as a whole are losing millions from equipment and facility maintenance, there is no way of knowing whether that information is valid. ***The university provides no evidence for their decisions, so students and organizations are kept in the dark***. (Emphasis added).[28]

61.     The Brookings Institution paper[29] cited in the Washington Square News article described in ¶ 60 compares online and in-person learning in higher education, finding adverse effects on student performance:

   a.   Students taking a course in-person averaged roughly a B-, whereas students taking that course online averaged roughly a C;[30]

   b.   Taking a course online reduces a student's overall GPA the following term by 0.15 points;[31]

   c.   Taking a course online reduces a student's GPA the following term for courses in the same subject area by 0.42 points;[32]

   d.   Taking a course online reduces a student's GPA the following term for courses for which the online course is a prerequisite by 0.32 points;[33] and

---

[28] *Id.*

[29] *See* Eric Bettinger & Susanna Loeb, *Promises and Pitfalls of Online Education*, Economic Studies at Brookings, Evidence Speaks Reports, Vol. 2, #15 (June 9, 2017), https://www.brookings.edu/wp-content/uploads/2017/06/ccf_20170609_loeb_evidence_speaks1.pdf (the "Brookings Report").

[30] *See* Brookings Report at 3.

[31] *Id.*

[32] *Id.*

[33] *Id.*

e. Taking a course online, as opposed to in person, reduces the likelihood  of a student remaining enrolled by roughly 9 percent.[34]

62.     As a student explained in a Change.org petition to NYU:

> I hope all are well during this unprecedented time. Everyone is struggling in one way or another. As the virus continued to spread public gatherings were halted. That also meant class for students at NYU, as well as around the globe, were halted. Classes have moved online which creates for an atmosphere that is quite divergent in comparison to our previous semester. Students are stuck at home listening to their professors through a tiny screen instead of a large lecture hall bustling with classmates. While we all appreciate our professors as well as NYU for continuing our education through COVID-19, something just doesn't sit right with me. Full tuition with some partial refunds is all that some students have been offered, but that is not enough. Full tuition should not be given when students do not have access to the buildings essential for their academic development. Another essential that we all pay for is our face to face interactions with our teachers which cannot be duplicated through a screen. Online colleges vary in tuition cost, but on average many online colleges is around $30,000 at most. NYU is obviously more expensive than that, but now that we are faced with an online solution similar to these online colleges shouldn't our institution match a similar price point? $30,000 into around 120 credits is about $200 per class. Until NYU can provide the resources that students normally received pre COVID-19 they should not expect their student to pay for the "normal" tuition. I understand that NYU has to continue paying rent for their buildings and teachers who are still  diligently teaching their students, but the reality is that NYU is an institution and a lot of institutions may receive government funds to  bail them out. Students on the other hand, many of whom are not receiving ANY governmental handouts due to the exclusion of the  stimulus package, will not be bailed out. We are not being taken care  of, and in that same lack of care, we will not be taken advantage of  either by institutions. If you feel the same, please sign this petition to further reduce the tuition payment for spring and summer classes  to reflect exactly what we are getting. Not only to reflect what the students are getting, but what we are lacking, and that is shown through every NYU students household right now as we sit and wait  for zoom university to start up.[35]

---

[34] *Id.*

[35] https://www.change.org/p/nyu-nyu-reduction-in-tuition-covid-19.

63.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and class members contracted and paid for. Plaintiffs and class members are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided. Even if Defendant claims it did not have a choice in cancelling in-person classes, it has nonetheless improperly retained funds for services it is not providing its students.

64.     Plaintiffs and members of the Class did not choose to attend an institution of higher learning for online instruction, but instead chose to attend Defendant's institution and enroll on an in-person basis.

65.     NYU has not provided the in-person education putative class members contracted and paid for.  The tuition and fees for in-person instruction at NYU are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but  encompass an entirely different experience which includes but is not limited to:

     a.    Face-to-face interaction with professors, mentors, and peers;

     b.    Access to campus facilities such as libraries, music studios, theaters, laboratories, computer labs,  and study rooms;

     c.    Student governance and student unions;

     d.    Extra-curricular activities, groups, intramural sports, etc.;

     e.    Student art, culture, and other activities;

     f.    Social development and independence;

     g.    Hands on learning and experimentation;

     h.    Networking and mentorship opportunities.

66.     In addition, a 2015 Stanford Center for Education Policy Analysis Working Paper[36] found that:

> a.   Students in an online course are 8.4 percent less likely to pass the course than are students taking the course in person;[37] and
>
> b.   Students in an online course are 12.3 percent less likely to receive an A minus or above than are students taking the course in person.[38]

67.     The Stanford Paper concludes that its analysis "provide[s] evidence that students in online courses perform substantially worse than students in traditional in-person courses, and these findings are robust across a number of specifications."[39]

68.     Faculty, academic leaders, employers, and the public remain skeptical about the value of online education.[40] A Gallup poll in 2013 found that "Americans' overall assessment of internet-based college programs is tepid at best." The majority of Americans found internet-based college programs to be "only fair" or "poor."[41]

69.     In ten national surveys of chief academic officers by the Babson Survey Research Group during the 2002-2015 period, no more than a third reported that their faculty

---

[36] *See* Eric Bettinger, Lindsay Fox, Susanna Loeb & Eric Taylor, *Changing Distributions: How Online College Classes Alter Student and Professor Performance*, CEPA Working Paper No. 15- 10 (October 2015), https://files.eric.ed.gov/fulltext/ED580370.pdf (the "Stanford Paper").
[37] *See* Stanford Paper at 16.
[38] *Id.*
[39] *Id.* at 18.
[40] *See* I. Elaine Allen, *et al.*, *Online Report Card: Tracking Online Education in the United States*, Babson Survey Research Group & Quahog Research Group, LLC 9 (Feb. 2016) ("Allen 2016 Survey"), available at https://onlinelearningsurvey.com/reports/onlinereportcard.pdf.
[41] Lydia Saad, *et al.*, In U.S. Online Education Rates Best for Value and Opinions; Viewed as Weakest in Terms of Trusted Grading and Acceptance by Employers, Gallup (Oct. 15, 2013) ("Saad Gallup Poll"), available at https://news.gallup.com/poll/165425/online-education-rated-best-value-options.apx.

"accept the  value and legitimacy of online education."[42]

70.     Similarly, in a 2012 survey of over 4,500 faculty, two-thirds  of faculty reported that learning outcomes for online courses are "inferior or somewhat inferior" when compared to face-to-face courses, with only 6 percent reporting outcomes for online instruction  as "superior or somewhat superior."[43]

71.     The Chronicle of Higher Education has also found that online colleges ranked last  in terms of "employer desirability of college type"; indeed, online programs were the only type  of college found to be undesirable.[44]   And a 2013 study found that over half of employers prefer "a job applicant with a traditional degree from an average school over an applicant with an online degree from a top university (just 17 percent say they'd prefer the latter)."[45]   Thus, students who receive entirely online instruction will have "limited labor market opportunities as long as these strong views persist among employers."[46]

72.     Prior to the Spring 2020 semester, Defendant did not offer a full-time online undergraduate option for all areas of study.  Instead, Defendant administered only a limited number of online undergraduate, graduate and certificate programs.

73.     Defendant's online programs were  designed, from their inception, to be taught and delivered online.  By offering such limited  courses and programs online, Defendant

[42] Allen 2016 Survey at 6.
[43] I. Elaine Allen, *et al.*, *Conflicted: Faculty and Online Education, 2012*, Babson Survey Research Group & *Inside Higher Ed* (Feb. 2012) ("Allen 2012 Survey"), available at https://files.eric.ed.gov/fulltext/ED535214.pdf.
[44] The Role of Higher Education in Career Development: Employer Perceptions, Chronicle of Higher Education (Dec. 2012), available at https://chronicle-assets.s3.amazonaws.com/5/items/biz/pdf/Employers%20Survey.pdf.
[45] Public Agenda, *Not Yet Sold: What Employers and Community College Students Think About Online Education* (Sept. 13, 2013), available at https://www.publicagenda.org/reports/not-yet-sold-what-employers-and-community-college-students-think-about-online-education/.
[46] *Id.*

acknowledged that virtual education is a unique format  and, moreover, that Defendant was
not prepared to deliver the hundreds of programs and degrees  it offers on-campus in a virtual
format.

74.     The remote, online learning "classes" offered to Spring 2020 students from
March  forward deprive students of in-person learning from their peers and school faculty.  The
move to  these remote classes have deprived students of access to the facilities, materials, and
opportunities   only offered on NYU's physical (as opposed to virtual) campus, including
laboratory and  research experience, studios, use of on-campus facilities, use of on-campus
services, and  attendance at on-campus events.

75.     Defendant markets the NYU on-campus experience as a benefit of enrollment
on NYU's website, including available "Arts, Culture, and Entertainment[47]", "Safety, Health,
and Wellness" benefits stemming from being in "the midst of New York City, NYU students
are truly part of the tempo and excitement of Greenwich Village and beyond[48]", and myriad
of other "Campus Resources[49]".

76.     With regard to its London Program in general, Defendant touts the immersive
and cultural experience that its provides to students[50]:

- "You will come to London expecting to immerse yourself in its bustling and
  vibrant present-day life. But, to your excitement, you'll find that traces of the
  city's complex past appear on practically every corner. You will discover
  that two thousand years of history are sedimented into its built environment
  and collective memory."
- "Wherever possible, your time in the classroom is enhanced and extended
  by co-curricular activities, such as theatre visits and trips to galleries and
  places of architectural interest."
- "As a NYU London student, you automatically have access to the University

---

[47] https://www.nyu.edu/life/arts-culture-and-entertainment.html
[48] https://www.nyu.edu/life/safety-health-wellness.html
[49] https://www.nyu.edu/life/campus-resources.html
[50] https://www.nyu.edu/london/about-us.html

of London's main library and become a member of the student union of University College London. This entitles you to join a wide array of clubs and associations, helping to extend your friendship circles beyond NYU."

- "Our Student Life team also offers a comprehensive program of activities and excursions so that you can attend London's football matches, musicals, comedy nights, and exhibitions and visit other regions and cities across the nation."

77.     When discussing the dramatic arts program for which Jaclyn was enrolled, NYU boasts that "You spend three days a week throughout the semester within the prestigious RADA facilities, whose halls have housed such notable alumni as Sir Anthony Hopkins, Ralph Fiennes, Alan Rickman, Mark Rylance, Maggie Gyllenhaal, Phoebe Fox, Gemma Aterton, and Taron Egerton.[51]"  "The emphasis of this practical program is on learning through the performance of Shakespeare: with work on sonnets, verse scenes, monologues, play projects, and a studio production; as well as classes in Voice, Physical Performance, Speech, Song, Dance, Clown and Armed Combat.[52]" "The combat training you receive at RADA will provide you with a three-year certification from the British Academy of Stage and Screen Combat.[53]"

78.     Jaclyn was also promised as part of her curriculum "weekly theatre visits to the West End and fringe theaters" and "field trips to sites of theatrical interest with a guest speaker or two…to discuss his/her work…to share knowledge and expertise and to help demonstrate how high-quality parts are needed to make a high-quality whole."[54]

79.     None of these promises were kept by NYU, including the failure to provide the three-year certification in Stage and Screen Combat, the weekly theatre visits or guest

---

[51] https://tisch.nyu.edu/special-programs/study-abroad/london-rada
[52] *Id.*
[53] *Id.*
[54] https://tisch.nyu.edu/special-programs/study-abroad/london-rada

speakers.

80.     The online learning options being offered to NYU students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. This is particularly true for students like Jaclyn focusing on dramatic arts because she cannot undertake required performances or partake of the facilities necessary to perform.

81.     The remote learning options are not equivalent to the in-person education putative class members contracted and paid for. The remote education being provided is not even remotely worth the amount charged class members for Spring Semester 2020 tuition. The tuition and fees for in-person instruction at NYU are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction but encompass an entirely different experience.  Many students have sought a refund of tuition for Spring Semester 2020 though  online petitions and other student-organized efforts.   NYU has refused to provide *any* refund of tuition despite the inferior experience students are receiving.

82.     Following requests by hundreds of  students at NYU's Tisch School of the Arts, NYU Dean Allyson Green responded by emailing  students a video of herself dancing with a message that students would not be receiving  tuition refunds.  The video gained media and social media traction and was reported on by the NY Post with an article titled  "Tone-deaf NYU Dean Sends Video of Herself Dancing to Students Seeking Tuition Refunds."[55]

83.     Further, a change.org petition signed by more than 2600 people seeking tuition

---

[55] https://nypost.com/2020/03/27/tone-deaf-nyu-dean-sends-video-of-herself-dancing-to-students-seeking-tuition-refunds/

relief sought tuition abatement on the basis that "remote learning via video conferencing app's like Zoom are not worth the school's $58,000-a-year tuition."[56]

84.    NYU has rejected appropriate tuition refunds, in breach of its contract with students and parents paying tuition for students.  Rather, "[a]s classes continue to be conducted  remotely; tuition will not be refunded."[57]

85.    For the same reason, Defendant refuses to provide its students with registration and  services fee refunds.[58]

86.    NYU has not refunded any amount of the tuition and has only refunded a  nominal portion of the mandatory fees, even though it suspended in-person classes and implemented online distance learning since March 11, 2020.

87.    On or around March 11, 2020, NYU ceased providing any of the services or facilities the mandatory fees were intended to cover because of NYU's response to the Coronavirus Disease 2019 ("COVID-19") pandemic.

88.    Plaintiffs and NYU entered into a contractual agreement wherein Plaintiffs would  provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of  the contractual agreement were set forth in publications from NYU, including NYU's Course  Catalog, brochures, advertisements, and other promotional materials.

89.    When  Plaintiffs  and  Class  Members  sought  to  enter  into  a  contractual agreement  with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs  and Class Members viewed the Course Catalog to make specific course

---

[56] *Id.*

[57] https://www.nyu.edu/life/safety-health-wellness/coronavirus-information/information-forstudents.html.

[58] *Id.*

selections prior to registering and paying for selected courses. Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided. Plaintiffs seek return of these amounts, as well as amounts paid by any student enrolled to participate in in-person and on campus credits or units, on behalf of themselves and the Class as defined below.

90.     While NYU has adjusted student accounts with prorated credits for room and board based on the date students move out, Defendant has refused to give a prorated refund for fees paid for student services students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus and return home.

91.     Defendant has also refused to provide any tuition adjustments, despite the significant changes Defendant implemented to student life, learning, and programs.

92.     In a list of FAQ's, Defendant previously advised students that tuition would not be refunded or discounted because "classes continue to be conducted remotely."[59]

93.     Defendant's decision to not issue refunds or discounts for tuition paid despite its failure to provide Plaintiffs and the putative class with the benefit of their bargain, is unacceptable and improper.

## CLASS ACTION ALLEGATIONS

94.     Plaintiffs sue under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules

---

[59] https://www.nyu.edu/life/safety-health-wellness/coronavirus-information/information-for-students.html#finop

of Civil Procedure, on behalf of themselves and a Class defined as follows:

### NYU Class

All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

### NYU Tisch Subclass

All persons enrolled at Defendant and Defendant's Tisch School of the Arts for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

### NYU Study Abroad Subclass

All persons enrolled at Defendant and Defendant's "Studying Abroad"[60] programs for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiffs reserve the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

95.     The definition of the Class is unambiguous.  Plaintiff Jaclyn Romankow is a member of the Class and subclasses she seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual

---

[60] https://www.nyu.edu/academics/studying-abroad.html

course of business by Defendant.

96.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

97.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

98.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

99.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.     Whether Defendant engaged in the conduct alleged;
b.     Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiffs and the Class Members;
c.     Whether Defendant breached identical contracts with Plaintiffs and

the Class Members;

    d.       Whether Defendant violated the common law of unjust enrichment;

    e.       Whether Defendant converted Plaintiffs and the Class Members refunds and/or rights to refunds; and

    f.       The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

100.    The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

101.    Plaintiffs' claims are typical of the claims of the other Class Members under Rule 23(a)(3).  Plaintiff Jaclyn Romankow was a student enrolled at Defendant in the Spring 2020 term.  Like other Class Members, Plaintiff Jaclyn Romankow was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

102.    Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiffs are familiar with the basic facts that form the bases of the Class Members' claims. Plaintiffs' interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class Members.

103.    The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually.

Even if the Class Members themselves could afford such individual litigation, the court system could not.

104.    In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

105.    Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiffs and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

106.    Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

107.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

108.    Plaintiffs and the Class Members entered into identical, binding contracts with Defendant.

109.    Under their contracts with Defendant, Plaintiffs and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

110.    Plaintiffs and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

111.    However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiffs and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiffs' and the Class Members' ability to access university facilities, and/or has evicted Plaintiffs and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiffs and the Class Members from the benefit of their bargains with Defendant.

112.    Plaintiffs and Class Members did not merely pay tuition to obtain credits, but also specifically paid for access to all the other facilities, culture, in-person instruction, certifications, and other experiences promised by NYU.  Defendant breached its contract with Plaintiffs and Class Members by failing to provide anything but credits to the Plaintiffs and Class Members in exchange for tuition.

113.    Additionally, every contract contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract.  The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

114.    Under the contract, Defendant had unilateral discretion to alter Jaclyn's and Class Members curriculum as long as it generally adhered to the standards and promises that it made.

115.    Plaintiffs and Class Members reasonably expected that Defendant would attempt to fulfill these obligations and if it could not, that Plaintiffs and Class Members would be provided with appropriate refunds.  Without these reasonable expectations, Plaintiffs and other Class members would not have entered into a contract with Defendant.

116.    Defendant breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral discretion to alter its curriculum in a way that did not comply with its obligations under the contract and nevertheless refused to provide any refunds to Plaintiffs and Class Members.

117.    Accordingly, Defendant exercised its discretion to provide appropriate refunds in bad faith and Plaintiffs and Class Members were damaged as a result.

118.    Plaintiffs and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

119.    Plaintiffs and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

### UNJUST ENRICHMENT

120.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein with the exception of those allegations contained in Count I, which are specifically excluded.

121.    This cause of action is pled in the alternative to Plaintiff's breach of contract claim and will only be pursued to the extent that the Court determines that no valid contract exists.

122.    At all times relevant hereto, Plaintiffs and the Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiffs and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

123.    Defendant knowingly accepted the benefits conferred upon it by Plaintiffs and the Class Members.

124.    Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiffs and Class Members.

125.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and Class Members, with full knowledge and awareness that, because of Defendant's unjust and inequitable actions, Plaintiffs and Class Members are entitled to refunds for tuition, fees, and/or room and board.

126.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non- gratuitous benefits unjust and inequitable.

127.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and Class Members is unjust and inequitable, Plaintiffs and Class Members are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## COUNT III

### CONVERSION

128.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

129.    Plaintiffs and the other Class Members have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiffs and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

130.    Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiffs and Class Members by effectively closing its campus to in-person education

and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiffs and the Class Members paid Defendant as well as barred Plaintiffs from Defendant's facilities.

131.    Defendant deprived Plaintiffs and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

132.    Plaintiffs and/or Class Members have requested and/or demanded that Defendant issue refunds.

133.    Defendant's interference with the rights and services for which Plaintiffs and members of the Class paid damaged Plaintiffs and Class Members, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiffs and Class Members of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members request that the Court enter an order or judgment against Defendant including:

A.    Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B.    Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.    Actual damages and all such other relief as provided under the law;

D.    Pre-judgment and post-judgment interest on such monetary relief;

E.    Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.     The costs of bringing this suit, including reasonable attorney's fees; and

G.     All other relief to which Plaintiffs and Class Members may be entitled by

law or in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on their own behalf and on behalf of Class Members.

Dated: September 11, 2020                     Respectfully submitted,


By:   */s/ Todd S. Garber*

Todd S. Garber
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: 914-298-3290
Fax: 914-908-6709
tgarber@fbfglaw.com

Matthew R. Mendelsohn
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel (973) 228-0391
Fax (973) 228-0303
mrm@mazieslater.com

*Counsel for Plaintiffs*