**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DAVID ROMANKOW and JACLYN
ROMANKOW on behalf of themselves and all
others similarly situated,

        Plaintiffs,

        v.

NEW YORK UNIVERSITY,

        Defendant.

Case No. 1:20-cv-04616-GBD

**DEFENDANT NEW YORK UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
THE PLAINTIFFS' FIRST AMENDED COMPLAINT**

**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 3

       A.    NYU's Various Schools, Colleges, and Programs Have Varying
Approaches to Admissions, Tuition, and Fees. .................................3

       B.    The Covid-19 Pandemic Forces NYU's Transition to Remote Learning. ..........4

       C.    NYU Provides Certain Refunds to Students. ..................................5

       D.    The Plaintiffs ...........................................................5

ARGUMENT ...................................................................................................... 8

   I.  Standard of Review ............................................................................ 8

   II.  The Court Should Not Intervene in Educational Decisions. ............................ 8

   III.  The Plaintiffs Do Not Have Article III Standing to Assert Certain Claims. .................... 11

       A.    Mr. Romankow Lacks Standing as a Parent. ..................................11

       B.    The Plaintiffs Lack Standing to Assert Claims Relating to Colleges,
Schools, and Programs in Which Ms. Romankow Was Not Enrolled. .............13

       C.    The Plaintiffs Lack Standing to Seek Prospective Injunctive Relief. ..............14

   IV.  The Study Away Travel Release Bars the Plaintiffs' Claims. ............................ 15

   V.  The Plaintiffs' Breach of Contract Claim Fails. ....................................... 16

       A.    Descriptions of the London Program and Its Curriculum Do Not Create
an Enforceable Contract. ................................................17

       B.    Covid-19 Rendered Performance Impossible. ..................................21

       C.    There Are No Allegations NYU Acted in Bad Faith. ...........................22

       D.    The Plaintiffs Failed Adequately to Allege Damages. ..........................24

   VI.  The Plaintiffs' Unjust Enrichment Claim Must Be Dismissed. ......................... 25

       A.    The Unjust Enrichment Claim Is Duplicative of the Breach of Contract
Claim. ..................................................................25

       B.    NYU Was Not Unjustly Enriched. .........................................26

   VII.  The Plaintiffs' Conversion Claim Must Be Dismissed. ................................ 27

       A.    The Conversion Claim Is Duplicative of The Breach of Contract Claim. ........27

       B.    The Right to In-Person Classes Is Intangible Property Not Subject to a
Conversion Claim. .......................................................28

C.    The Plaintiffs Had No Ownership Interest in and NYU Did Not

Exercise Unauthorized Dominion Over In-Person Classes.............................28

CONCLUSION.................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital LLC*,
  2001 WL 410074 (S.D.N.Y. April 23, 2001) ........................................................16

*Andre v. Pace Univ.*,
  655 N.Y.S.2d 777 (2d Dep't 1996) .........................................................................9

*Anthes v. New York Univ.*,
  2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v.*
  *Nelson*, 763 F. App'x 57 (2d Cir. 2019) ...............................................................16

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
  2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009).........................................................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................8

*Barsoumian v. Williams*,
  29 F. Supp. 3d 303 (W.D.N.Y. 2014) ......................................................................9

*Bautista v. CytoSport, Inc.*,
  223 F. Supp. 3d 182 (S.D.N.Y. 2016).....................................................................25

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
  2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018).............................................................3

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008).....................................................................28

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020)...................................................................................14

*Brinkman v. Miami Univ.*,
  2007 WL 2410390 (Ohio Ct. App. Aug. 27, 2007) ...........................................11, 12

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005).....................................................................................3

*Bytemark, Inc. v. Xerox Corp.*,
  342 F. Supp. 3d 496 (S.D.N.Y. 2018).....................................................................25

*Cheves v. Trs. of Columbia Univ.*,
  89 A.D.3d 463 (1st Dep't 2011) .............................................................................18

*Chong v. Northeastern University*,
    2020 WL 5847626 (D. Mass. Oct. 1, 2020)...............................................19, 26

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000)......................................................28, 29

*Cooper v. Peterson*,
    626 N.Y.S.2d 432 (N.Y. Sup. Ct. 1995) ..................................................18, 19

*Cordell v. McGraw-Hill Cos., Inc.*,
    525 Fed. App'x 22 (2d Cir. 2013)..................................................................22

*Cuesnongle v. Ramos*,
    713 F.2d 881 (1st Cir. 1983) ..........................................................................17

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
    352 F.3d 775 (2d Cir. 2002)............................................................................19

*DiMuro v. Clinique Labs., LLC*,
    572 F. App'x 27 (2d Cir. 2014) ......................................................................13

*Doe v. Univ. of the South*,
    687 F. Supp. 2d 744 (E.D. Tenn. 2009)....................................................11, 12

*Doherty v. S. Coll. of Optometry*,
    862 F.2d 570 (6th Cir. 1988) ..........................................................................19

*Doyle v. MasterCard Int'l Inc.*,
    2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) ...............................................24

*Freedberg v. J.P. Morgan Chase & Co.*,
    2016 WL 7495181 (S.D.N.Y. Dec. 22, 2016) .................................................3

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)...................................................... *passim*

*Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*,
    288 F. Supp. 2d 473 (S.D.N.Y. 2003)............................................................29

*Gokool v. Okla. City Univ.*,
    716 F. App'x 815 (10th Cir. 2017) .................................................................25

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...............................................................27

*Gomez-Jimenez v. N.Y. Law Sch.*,
    36 Misc. 3d 230 (Sup. Ct. N.Y. Cty. 2012) ..................................................24

*United States ex rel. Hanks v. United States*,
    961 F.3d 131 (2d Cir. 2020)............................................................................8

*Hauptman v. Interactive Brokers, LLC*,
    349 F. Supp. 3d 292 (S.D.N.Y. 2018) (Daniels, J.) ......................................30

*Int'l Bus. Machs. Corp. v. Dale*,
    2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011)................................................24

*Jeffers v. Am. Univ. of Antigua*,
    125 A.D.3d 440 (1st Dep't 2015) ...........................................................25, 28

*Kamdem-Ouaffo v. Pepsico, Inc.*,
    2015 WL 1011816 (S.D.N.Y. Mar. 9, 2015)................................................26

*Keefe v. New York Law Sch.*,
    71 A.D.3d 569 (1st Dep't 2010) ...................................................................17

*Keles v. New York Univ.*,
    1994 WL 119525 (S.D.N.Y. Apr. 6, 1994)...................................................19

*King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*,
    2009 WL 5033960 (S.D.N.Y. Dec. 23, 2009) ..............................................26

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009)...........................................................29

*Kolodin v. Valenti*,
    115 A.D.3d 197 (1st Dep't 2014) .................................................................21

*L. N. Jackson & Co. v. Royal Norwegian Gov't*,
    177 F.2d 694 (2d Cir. 1949)..........................................................................21

*Laramee v. Jewish Guild for the Blind*,
    72 F. Supp. 2d 357 (S.D.N.Y. 1999).............................................................16

*Leslie v. New York Univ.*,
    2020 WL 5819730 (Sup. Ct. N.Y. Cty. Sept. 29, 2020) .................................9

*Mahavongsanan v. Hall*,
    529 F.2d 448 (5th Cir. 1976) ........................................................................17

*Mahoney v. Endo Health Solutions, Inc.*,
    2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016) ................................................25

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)........................................................................3, 8

*Mangla v. Brown Univ.*,
  135 F.3d 80 (1st Cir. 1998) ..........................................................................................19

*Matzan v. Eastman Kodak Co.*,
  134 A.D.2d 863 (4th Dep't 1987) ................................................................................28

*Metal Cladding, Inc. v. Brassey*,
  159 A.D.2d 958 (4th Dep't 1990) ................................................................................27

*Mihalakis v. Cabrini Med. Ctr.*
  151 A.D.2d 345 (1st Dep't 1989) ................................................................................24

*Morgan v. City of New York*,
  166 F. Supp. 2d 817 (S.D.N.Y. 2001) ..........................................................................11

*Morrison v. Nat'l Austl. Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) ..........................................................................................8

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
  225 F. Supp. 3d 201 (S.D.N.Y. 2016) ..........................................................................27

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ........................................................................................14

*Olsson v. Bd. of Higher Educ. of City of N.Y.*,
  49 N.Y.2d 408 (1980) ............................................................................................22, 23

*Organizacion JD LTDA v. U.S. Dep't of Justice*,
  18 F.3d 91 (2d Cir. 1994) ............................................................................................21

*OTG Brands, LLC v. Walgreen Co.*,
  2015 WL 1499559 (S.D.N.Y. Mar. 31, 2015) ..........................................................28, 29

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ................................................................13

*Police Benev. Ass'n of New York State Police, Inc. v. New York*,
  358 N.Y.S.2d 280 (1974) ............................................................................................12

*Prusack v. New York*,
  117 A.D.2d 729 (2d Dep't 1986) ................................................................................19

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
  2005 WL 1214281 (S.D.N.Y. May 20, 2005) ................................................................8

*Regents of Univ. of Michigan v. Ewing*,
  474 U.S. 214 (1985) ....................................................................................................22

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon,*
775 F.3d 154 (2d Cir. 2014)..........................................................................13, 14

*Rodriguez v. New York Univ.,*
2007 WL 117775 (S.D.N.Y. Jan. 16, 2007) ...............................................22, 23

*Roe v. Loyola Univ. New Orleans,*
2007 WL 4219174 (E.D. La. Nov. 26, 2007) ...............................................16, 27

*Samad v. Goldberg,*
2016 WL 6678923 (S.D.N.Y. Nov. 14. 2016) ....................................................27

*Schachter v. U.S. Life Ins. Co. in City of New York,*
77 F. App'x 41 (2d Cir. 2003) .............................................................................8

*Soueidan v. St. Louis Univ.,*
926 F.3d 1029 (8th Cir. 2019) .............................................................................9

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016).......................................................................................14

*Suffolk Cty. v. Long Island Lighting Co.,*
728 F.2d 52 (2d Cir. 1984).................................................................................11

*Tasini v. New York Times Co., Inc.,*
184 F. Supp. 2d 350 (S.D.N.Y. 2002)..................................................................8

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.,*
196 F. Supp. 2d 378 (S.D.N.Y. 2002)................................................................27

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
2020 WL 2907676 (S.D.N.Y. June 3, 2020) .....................................................15

*Villareal v. Chamberlain Coll. of Nursing and Health Scis. Inc.,*
2019 WL 4736488 (S.D. Tex. Sept. 27, 2019) ..................................................19

*Weisblum v. Prophase Labs, Inc.,*
88 F. Supp. 3d 283 (S.D.N.Y. 2015)..................................................................26

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,*
127 F. Supp. 3d 156 (S.D.N.Y. 2015)..................................................................3

*WestLB AG v. BAC Fla. Bank,*
912 F. Supp. 2d 86 (S.D.N.Y. 2012)..................................................................25

*Yalincak v. New York Univ.,*
2009 WL 10714654 (D. Conn. Sept. 3, 2009) .............................................25, 27

*Zirvi v. Flatley*,
    433 F. Supp. 3d 448 (S.D.N.Y. 2020) ..................................................................................28

**Other Authorities**

Fed R. Evid. 201(b)(2) ..................................................................................23

Fed. R. Civ. P. 12(b)(1) ..................................................................................8

Fed. R. Civ. P. 12(b)(6) ..................................................................................8

## PRELIMINARY STATEMENT

The novel coronavirus disease 2019 ("Covid-19") unleashed unprecedented and unanticipated threats to global public health and safety. Public health officials, New York State, and the U.S. and U.K. governments issued directives designed to protect the public – including the students, faculty, and staff at defendant New York University ("NYU") – from Covid-19's growing danger. These directives and the threats attendant to large groups congregating on a college campus forced NYU to make the difficult but well-considered decision to transition to remote teaching for the remainder of the Spring 2020 semester. Notwithstanding the significant logistical effort and expense involved, NYU remained committed to delivering world-class education by implementing creative ways to conduct nearly all classes by remote instruction.

NYU followed through on its commitment. Professors continued to teach; students continued to learn. *See*, *e.g.*, Decl. of Keara M. Gordon, dated Nov. 5, 2020, Ex. 1. Professors adapted; NYU held remote classes across its schools and colleges, centers and institutes, programs, and areas of study. Exs. 2–5. Every day, faculty worked to deliver NYU's intellectually stimulating educational content in new ways, and students benefitted. *See* Ex. 1. At the end of the semester, thousands of NYU students received educational credits and earned degrees. *See* Ex. 6.

Nevertheless, and despite the fact that Covid-19, not NYU, required the transition to remote learning, plaintiffs Jaclyn Romankow, a visiting student enrolled for one semester in NYU's London study abroad program, and her father David Romankow (the "plaintiffs") brought a putative class action against NYU that: asks this Court effectively to second guess NYU's judgment in transitioning to remote learning and to bring home students in NYU's London study abroad program; argues that, in their opinion, the remote learning environment to which faculty were forced to transition, and the manner in which each of Ms. Romankow's professors then delivered that instruction, was ineffective (apparently in total); and demands the return of

Ms. Romankow's tuition and fees.[1]

In response to the plaintiffs' first complaint, NYU moved to dismiss.  In its motion, NYU demonstrated that each of their claims failed for numerous reasons.  Their Amended Complaint ("AC") fails to remedy any of those deficiencies.

The plaintiffs assert three claims: (1) breach of contract; (2) unjust enrichment; and (3) conversion.  All fail:

- At their core, each of the plaintiffs' claims impermissibly asks this Court to second guess NYU's educational decisions including the manner and effectiveness of the provision of educational services, which longstanding New York precedent precludes; indeed, what the plaintiffs seek would require the Court to review and assess Ms. Romankow's (and potentially the entire putative classes') course materials, syllabi, assignments, the method of teaching provided both before and after the transition to remote learning, any subsequent lessening of effectiveness (however measured), the student's input and work product, the student's subjective learning preferences, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard (whatever that may be) (*see* Section II);

- Mr. Romankow, as the parent of an adult student, does not have Article III standing to assert claims against NYU (*see* Section III.A);

- The plaintiffs lack Article III standing to assert these claims on behalf of absent class members who attended colleges, schools, or programs within NYU that Ms. Romankow did not attend.  Each school, college, and program is different – the experience will differ for example, between students at NYU's New York campus versus study abroad programs, graduate students versus undergraduates, law students versus medical students, versus engineering students, versus MBAs, versus actors, versus dancers, versus education majors, versus biology majors (*see* Section III.B);

- The plaintiffs lack Article III standing to seek injunctive relief, as they do not allege that Ms. Romankow will be taking NYU classes in the future (*see* Section III.C);

- The AC must be dismissed because the Study Abroad Travel Release Ms. Romankow agreed to upon her enrollment bars the plaintiffs' claims (*see* Section IV);

- The breach of contract claim must be dismissed because (1) descriptions of the London program courses or curriculum in admissions materials or otherwise do not create an enforceable contract, especially in light of the express disclaimers in NYU bulletins and

---

[1]    There are three other actions against NYU: *Rynasko v. New York Univ.*, No. 1:20-cv-3250-GBD (S.D.N.Y.); *Zagoria v. New York Univ.*, No. 1:20-cv-3610-GBD (S.D.N.Y.); *Morales v. New York Univ.*, No. 1:20-cv-4418-GBD (S.D.N.Y.).

other materials; (2) Covid-19 rendered performance impossible; (3) NYU did not act in bad faith; and (4) the plaintiffs failed adequately to allege damages (*see* Section V);

- The unjust enrichment claim must be dismissed because: (1) it is duplicative of the other causes of action; and (2) the plaintiffs have not pled that NYU was unjustly enriched (*see* Section VI); and

- The conversion claim must be dismissed because: (1) it is duplicative of the breach of contract claim; (2) the right to in-person classes is intangible property not subject to a conversion claim; and (3) the plaintiffs did not have an ownership interest in, and NYU did not exercise unauthorized dominion over, in-person instruction (*see* Section VII).

Respectfully, the Court should dismiss the AC with prejudice and without leave to amend.

## STATEMENT OF FACTS

### A.    NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees.

NYU is an educational institution that, during the 2019-2020 school year alone, delivered higher education to over 50,000 enrolled undergraduate and graduate students. *See* AC ¶ 2. NYU's academic offerings include certificate programs, accelerated programs, study abroad, exchange programs, part-time studies, full-time studies, and associate, bachelor's, post-bachelor's, master's, post-master's, and doctoral programs. *See, e.g.*, Exs. 2–5.[2] These wide-ranging academic offerings are delivered through NYU's 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study. *Id.* Many of NYU's different schools

---

[2]    NYU accepts the plaintiffs' allegations as true except to the extent that they are contradicted by documentary evidence. NYU reserves the right to dispute their accuracy if the case proceeds (which it should not). But the Court is not required to accept as true allegations that are contradicted by documents. When a "complaint relies on the terms of [an] agreement," the Court "may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). The Court may consider government documents, publicly available documents, and published websites. *See, e.g.*, *Freedberg v. J.P. Morgan Chase & Co.*, 2016 WL 7495181, at *1 n. 1 (S.D.N.Y. Dec. 22, 2016) (admissions in pleadings); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) ("official government websites [and] governmental records"); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018) ("documents on published websites"). The Court can consider materials beyond the pleadings to resolve a factual challenge to the Court's jurisdiction. *See, e.g.*, *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).

and colleges have their own admissions process (*see*, *e.g.*, Exs. 7–11) and use different admissions-related materials for prospective students, on different websites, which highlight the distinct aspects unique to them, and which have changed over time (*see*, *e.g.*, Exs. 12–14).

NYU assesses each student's tuition and fees based on the student's circumstances, including the school within NYU, the program within that school, and the particular courses taken. *See* AC ¶ 44 ("Fees paid … vary based on program of study"). NYU specifically informs all students that they "are assessed tuition and fees based on the factors below: School or College within [NYU] ... Program ... [and] Credit Hours Enrolled," not by any other factors (such as mode or location of instruction or course content). Ex. 15. NYU further reserves all rights to change its tuition and fees through disclaimers on its webpage and in course bulletins. For example, it warns, "*Disclaimer: The Board of Trustees of New York University reserves the right to alter the schedule of fees without notice*" (Ex. 15) (emphasis in original), "tuition, fees ... *are subject to change without notice at any time at the sole discretion of the administration*" (Ex. 16) (emphasis added), and "[c]lass schedule and room locations [are] subject to change" and "[c]lass meeting times may vary." Ex. 17.

### B.    The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.

On March 7, 2020, Governor Andrew Cuomo declared a State of Emergency across New York due to a rapid increase in confirmed cases of Covid-19. Ex. 18. On March 11, 2020, President Donald Trump announced a suspension of travel from Europe to the U.S. that on March 14, 2020, he expanded to include the U.K. *See* Exs. 19, 20. According to the AC, Ms. Romankow was instructed to leave London, which she did on March 16, 2020. AC ¶ 16. That same day, Governor Cuomo issued an expanded Executive Order; he closed all schools, prohibited all large gatherings, and shuttered bars and restaurants. Exs. 21, 22. Consistent with the government orders and to protect the health and safety of its community, NYU announced the difficult, but essential,

decision to move to remote learning for the rest of the semester, following its previous announcements of a temporary transition.  Exs. 23–25.  On March 18, 2020, the U.K. government issued an order closing schools indefinitely.  Ex. 26.  On March 20, 2020, Governor Cuomo announced an Executive Order, which "ban[ned] all non-essential gatherings of individuals of any size for any reason."  Ex. 27.  On March 23, 2020, the U.K. prohibited non-essential gatherings of more than two people and closed all but essential business.  Exs. 28, 29.

### C.   NYU Provides Certain Refunds to Students.

After transitioning to remote learning and closing most of its residence halls, NYU refunded housing and meal costs *pro rata*.  Ex. 24.  NYU also refunded certain activity fees, following evaluation of "dozens of individual school- and course-based fees for the purpose of determining potential refunds."  Ex. 30; *see* Ex. 31.  NYU continued to provide numerous services, such as career services, student health services, academic support, advising, and information technology support; it did not refund fees for services that it continued to supply.  Ex 32.

Consistent with its policy that students who remain enrolled in at least one course are not eligible for a refund after February 10, 2020 and students who withdraw from all classes are not eligible for a refund after February 24, 2020 (*see* Exs. 33–35), and because students continued to receive instruction remotely, earn credits and graduate, NYU has not refunded tuition.  *See* Ex. 32.

### D.   The Plaintiffs

Ms. Romankow was a visiting student who enrolled at NYU's Tisch School of the Arts ("Tisch") London program for one semester.  Ex. 36; AC ¶ 13.  Before Ms. Romankow enrolled in the program (*see* Ex. 36), Tisch released its "University Bulletin," which included a disclaimer that "[p]ayment of tuition or attendance at any classes ... constitute[d] [the] *student's* acceptance of the administration's rights" as follows:

The policies, requirements, course offerings, schedules, activities, tuition, fees, and

5

> calendar of the school and its departments and programs ... *are subject to change without notice at any time at the sole discretion of the administration*. Such changes may be *of any nature*, including, but not limited to, the elimination of the school, programs, *classes,* or activities; the *relocation* of or *modification* of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities.

Ex. 16 (emphasis added).  NYU's course registration system further provided, at the time of registration for classes, that its "[c]lass schedule and room locations [are] subject to change" and "[c]lass meeting times may vary."  Ex. 17.

When she enrolled in the NYU London program, Ms. Romankow signed a release, the Study Away Travel Release (the "Release").  Ex. 37.  At that time, NYU's online portal required Ms. Romankow to acknowledge her agreement to the Release, which she did.  *See* Ex. 38.  Under the terms of the Release, Ms. Romankow waived her and her father's right to all claims against NYU relating to her participation in the study abroad program.  *See* Ex. 37.

Nevertheless, the plaintiffs demand a refund of tuition and fees they purportedly paid for Ms. Romankow's enrollment in the study abroad program.  *See* AC ¶ 63.  Ms. Romankow and her father claim that Mr. Romankow "was responsible for and paid the tuition bill on behalf of his daughter" (*see* AC ¶ 13); however, when Ms. Romankow authorized her father's access to NYU's online portal to submit tuition payments on her behalf, she explicitly acknowledged that she was "still responsible for ensuring that all my accounts are paid on time and in full."  *See* Ex. 39.

In the AC, the plaintiffs admit that "the reasons for" NYU's transition to remote learning "are justified," but allege that they believe remote instruction was "subpar" to in-person instruction "in practically every aspect," "not the same," "limited," "void of … interaction," and not "comprehensive" (*see* AC ¶¶ 2, 7, 8, 58, 80), which they claim entitles them to a refund of tuition and fees.  AC ¶ 63.  But the plaintiffs admit that NYU has already "refunded a … portion of mandatory fees" and that NYU has already "adjusted student accounts with prorated credits for

room and board."  AC ¶¶ 86, 90.

While the plaintiffs claim that NYU breached an alleged contract with them, they do not articulate or attach the purported "contract," instead referencing generally "NYU's Course Catalog" and unidentified and unspecified "brochures, advertisements, and other promotional materials."  AC ¶¶ 88–89.  The plaintiffs state that they "viewed the Course Catalog to make specific course selections prior to registering and paying for selected courses," but they fail to explain what, exactly, that catalog allegedly said.  AC ¶ 89.  The plaintiffs also reference undated pages on the NYU website promoting benefits of being in New York City even though Ms. Romankow never intended to study at NYU in New York, but solely in London.  AC ¶¶ 29, 30, 33–36.  They also reference statements regarding the NYU London program, including "theatre visits," "trips to galleries and places of architectural interest," as well as "football matches, musicals, comedy nights, and exhibitions" and Royal Academy of Dramatic Art ("RADA") facilities, Shakespeare plays, and combat training, which Covid-19 prevented.  AC ¶¶ 76–80.

The plaintiffs seek to represent a putative class of anyone – apparently students, parents, grandparents, employers, and possibly others – who paid NYU any "tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities" in the Spring 2020 semester.  AC ¶ 94.  The plaintiffs also seek to represent two subclasses of all Tisch students or all study abroad students. *Id.*; Ex. 40.

## ARGUMENT

### I.    <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, although the Court must accept all of a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss. *Id.* at 679.

"A case is properly dismissed for lack of subject-matter jurisdiction … when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova,* 201 F.3d at 113; *see also Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (same). Courts lack subject matter jurisdiction when the plaintiff does not have Article III standing. *Schachter v. U.S. Life Ins. Co. in City of New York,* 77 F. App'x 41, 42 (2d Cir. 2003). In a factual standing challenge, as NYU makes here, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (citation and internal quotation marks omitted) (collecting cases); *see also United States ex rel. Hanks v. United States*, 961 F.3d 131, 136-137 (2d Cir. 2020) (a factual challenge "imposed on [plaintiff] the burden to show [jurisdiction] by a preponderance of the evidence").

### II.    <u>The Court Should Not Intervene in Educational Decisions.</u>

As a threshold matter, the plaintiffs' claims should be dismissed because they are premised on allegations that improperly ask the Court to evaluate whether NYU made the right decision to transition to remote learning, and then, once made, to examine whether individual faculty members failed to provide an effective education in particular courses during remote instruction. "[C]ourts

retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *10-11 (S.D.N.Y. May 20, 2005) (student failed to state a breach of contract claim) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) (affirming dismissal of breach of contract claim; administrators are "better suited" to make decisions)).  "It is the longstanding policy of the New York courts that 'the administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are … better suited to make relatively final decisions concerning wholly internal matters.'"  *Leslie v. New York Univ.*, 2020 WL 5819730, at *4 (Sup. Ct. N.Y. Cty. Sept. 29, 2020) (quoting *Maas*, 94 N.Y.2d at 92).

It is well-settled that New York does not recognize claims that require the Court to second-guess the decisions of educators or are akin to claims "that the school breached its agreement by failing to provide an effective education," such as where a court would have to "evaluate the course of instruction" or "review the soundness of the method of teaching ... " *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (2d Dep't 1996) (citation and internal quotation marks omitted) (reversing trial court judgment for student).  "Such inquiry would constitute a clear 'judicial displacement of complex educational determinations' that is best left to the educational community." *Id.* (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868 (2d Dep't 1982)); *see also*, *e.g.*, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 322 (W.D.N.Y. 2014) (dismissing breach of contract claim alleging that school "failed to provide [plaintiff] 'with an education environment conducive to learning'"); *see also Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019) (citation and internal quotation marks omitted) ("A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice.").

Indeed, "[n]ot every dispute between a student and a university is amenable to a breach of

contract claim … Where the essence of the complaint is that the school … fail[ed] to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206–07 (S.D.N.Y. 1998) (dismissing breach of contract claim).  "[E]ven while applying contract principles, the courts have been careful to disallow claims that would involve the judiciary in reviewing the day-to-day judgments of educators." *Id.* at 209.

This longstanding line of authority is directly applicable here.  In *Paynter v. New York University*, for example, the plaintiff sued for a tuition refund after NYU suspended classes on May 7, 1970 as a result of anti-war demonstrations.  319 N.Y.S.2d 893, 893 (1st Dep't 1971).  The First Department reversed the trial court's decision that a refund was warranted and held that the trial court "erred in substituting its judgment for that of the University administrators and in concluding that the University was *unjustified* in suspending classes for the time remaining in the school year prior to the examination period." *Id.* at 894 (emphasis added).  In so doing, the Court recognized the general principle that "[p]rivate colleges and universities are governed on the principle of self-regulation … and they have inherent authority to maintain order on their campuses." *Id.*  The Court expressly observed that, "while in a strict sense, a student contracts … for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id.*

The same result follows here.  The plaintiffs challenge NYU's decision to move all courses to remote instruction and allege that, in their opinion, the resulting education that each faculty member provided in each class was not as effective as it otherwise would have been.  *See* AC ¶ 8. Specifically, the plaintiffs:

- Assert that the remote classes offered were "subpar," "not the same," "limited," "void of … interaction," and not "comprehensive" (*see id.* ¶¶ 2, 7, 8, 80);

- cite to a number of statistics purportedly establishing the difference in the *effectiveness* of online education and in-person education (*see id.* ¶¶ 66–71); and

- repeatedly quote various individuals' hearsay statements opining that they perceived a purported lesser *quality and effectiveness* of online education, such as that it was of "poor" quality. *See, e.g., id.* ¶¶ 60, 68.

As a result, to adjudicate this dispute, the Court would need to examine and evaluate the actual quality of the education provided, which would require the Court to review and assess Ms. Romankow's (and potentially every NYU student's) course materials, syllabi, objectives, assignments, the method of teaching provided both before and after the transition to remote learning, its effectiveness (however measured), the student's input and work product, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or purportedly promised standard. Such an analysis would be further complicated by the fact that this calculus may be different depending upon whether the course at issue is statistics versus Shakespeare, versus law, versus biology, versus finance, versus education, versus engineering, and versus chemistry. And, the Court would need to factor in the subjective desires and preferences of students, which are not uniform and many of whom learn differently. Well-established precedent mandates that the Court should not wade into such day-to-day judgments of educators. Accordingly, the AC must be dismissed.

## III.   The Plaintiffs Do Not Have Article III Standing to Assert Certain Claims.

### A.   Mr. Romankow Lacks Standing as a Parent.

Mr. Romankow's claims must be dismissed because, as a parent of an adult student, he lacks standing. "[T]he 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority." *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009) (citation omitted). Thus, courts hold that parents lack standing to assert claims against a university based on the payment of tuition when

the student is over the age of eighteen.  *See, e.g.*, *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819–20 (S.D.N.Y. 2001) (parent lacked standing to bring claims under Title IX, § 1983 and N.Y. Educ. Law § 313 on behalf of daughter); *Doe*, 687 F. Supp. 2d at 761-64; *Brinkman v. Miami Univ.*, 2007 WL 2410390, at *10 (Ohio Ct. App. Aug. 27, 2007); *Suffolk Cty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984) (affirming dismissal; "[A]bsent a contractual relationship there can be no contractual remedy.").[3]

In *Doe*, for example, the parents of a college student sought to assert claims against the student's school for, among other things, breach of express and implied contract and unjust enrichment.  687 F. Supp. 2d at 749.  The Court found that for the parents "to establish standing to sue the University … they must first be able to prove the existence of a contract or for the Court to find that the parties must have entered into an agreement which is sufficiently definite and certain so that the terms are either determined or may be implied."  *Id.* at 761.  The Court rejected the parents' contention that "the payment of tuition created a contractual or quasi-contractual relationship with the University."  *Id.*  "When a child reaches the age of majority, such standing simply transfers from the parent to the child."  *Id.* (citation and internal quotation marks omitted).

Similarly, in *Brinkman*, a father argued that he had "standing to challenge [a] university's domestic-partner benefits program" because he paid tuition for his adult children.  2007 WL 2410390, at *10.  The Court disagreed: "[W]e find no authority to support the proposition that [the parent's] payment of tuition … gives him standing in this case … "  *Id.* The Court found instead that "[the parent] is not obligated by law to pay …  In fact, the tuition bill is not even Brinkman's.  The bill is the financial responsibility of his adult children ... "  *Id.*

---

[3]     Even if Mr. Romankow had a contract with NYU (which he does not), he is merely a promisee, and his daughter is the third-party beneficiary who can bring the action.  *Police Benev. Ass'n of New York State Police, Inc. v. New York*, 358 N.Y.S.2d 280, 284 (1974).

Here, similarly, Mr. Romankow's payment of his daughter's tuition does not confer standing. *Id*. Ms. Romankow's NYU account was in her name. *See*, *e.g.*, Ex. 41. When she authorized her father's access to NYU's online portal to submit tuition payments on her behalf, she explicitly acknowledged that she was "still responsible for ensuring that all my accounts are paid on time and in full." Ex. 39; *see* Ex. 40. Any tuition contract – express or implied – is between NYU and the student. Mr. Romankow's claims should be dismissed with prejudice.

### B. The Plaintiffs Lack Standing to Assert Claims Relating to Colleges, Schools, and Programs in Which Ms. Romankow Was Not Enrolled.

The plaintiffs do not have standing to assert claims related to the schools, colleges, and programs Ms. Romankow did not attend. A named plaintiff lacks standing to assert claims on behalf of putative class members where those claims would not raise "a set of concerns nearly identical" to hers. *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (quotation omitted) (dismissing claims; "each of the seven different products have different ingredients, and [defendant] made different advertising claims for each" thus "[e]ntirely unique evidence" would be required to assess claims regarding each product); *see Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon,* 775 F.3d 154, 162 (2d Cir. 2014); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *4-7 (S.D.N.Y. Oct. 7, 2019) (no standing).

In *Retirement Board*, for example, the Second Circuit held that a plaintiff lacked standing where its claims "turn[ed] on very different proof" for different loans being held by different trusts. 775 F.3d at 162 (quotation omitted). "[W]hether [the defendant] breached its obligations … require[d] examining its conduct with respect to each trust" because there is "no way in which answering these questions for the trusts in which Plaintiffs invested [would] answer the same questions for the numerous trusts in which they did not invest." *Id.*

So too here. The plaintiffs purport to represent a class that consists not only of students

and a myriad of associated third-party payors in a particular school or program, but everyone who paid NYU tuition, whether as an undergraduate, graduate, or doctorate candidate, in any discipline. The admissions-related materials describing these varied programs, the course offerings, and course catalogs were different across NYU's various colleges, schools, and programs, and have changed over time. *See* Exs. 7–14. And, the manner and method of the delivery of classes within each – much less across all – varied, as did the student's subjective views of each course.

The plaintiffs base their contract claim on the representations that they allege NYU made to Ms. Romankow. Obviously, she was not exposed to representations made regarding different disciplines, programs, or course offerings, particularly since Ms. Romankow was a visiting student who enrolled for one semester to attend the NYU London study abroad program, and any alleged contract did not encompass statements regarding other programs or NYU's New York campus. And, NYU provided different refunds for school or course-based fees or equipment. *See* Exs. 25, 30, 31. Thus, "whether [NYU] breached its obligations … requires examining its conduct with respect to" the different admissions materials for each school, college, and program, and therefore, the plaintiffs lack standing to assert claims on those students' behalf. *Ret. Bd.*, 775 F.3d at 162.

### C. The Plaintiffs Lack Standing to Seek Prospective Injunctive Relief.

The "'irreducible constitutional minimum' of standing" requires a plaintiff to plead a "'concrete and particularized injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-1548 (2016) (citation omitted). A plaintiff "lack[s] standing to pursue injunctive relief [if he or she is] unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). "[P]ast injuries … do not confer standing … unless the plaintiff … is likely to be harmed again … in a similar way." *Id.* "The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a plaintiff ' … must show a likelihood that [s]he … will be injured in the future.'"

*Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)). Here, the plaintiffs' purported injuries result from the now-concluded Spring 2020 semester, which Ms. Romankow completed as a visiting student. *See* Ex. 36. She cannot possibly suffer harms relating to future semesters at NYU. The claim for injunctive relief must be dismissed.

## IV.   **The Study Away Travel Release Bars the Plaintiffs' Claims.**

The Release to which Ms. Romankow agreed electronically when she enrolled in the NYU London program bars her (and her father's) claims as a matter of law. By agreeing to the terms of the Study Away Travel Release, Ms. Romankow agreed, among other things, that:

- "I understand that the University is not insuring or guaranteeing in any manner, my safety from personal injury or other loss or damage that may occur as a result of the Program;"

- "The University is not responsible for my losses, illnesses, injuries or disabilities or for the conditions I experience during the Program, including those that occur during University sponsored or supervised activities;" and

- "Knowing the risks and dangers associated with the program and in consideration for being permitted to participate in the Program, I also agree, to the maximum extent permitted by law … not to raise any claim or institute any legal action or proceeding against the University that I have ever had, now have, or may have in the future or which my *heirs, executors, administrators, or assigns* may have, or claim to have, for any cause of action that may result from or arise out of my participation in the Program or any travel related to the Program[.]" *See* Exs. 37 (emphasis added), 38.

By agreeing to these terms,[4] Ms. Romankow waived her and her father's right to bring suit against NYU for any alleged losses from her participation in the study abroad program, including the purported losses claimed in the AC.

Ms. Romankow is bound by the Release. "The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, 'for the principal reason that the user has affirmatively

---

[4]     The fact that Ms. Romankow signed the Release further evidences that any contract was between Ms. Romankow and NYU, not between Mr. Romankow and NYU.

assented to the terms of agreement by clicking 'I agree.'"  *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2020 WL 2907676, at *3 (S.D.N.Y. June 3, 2020) (agreement enforceable) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). "It is appropriate to grant a motion to dismiss on the basis of a binding release agreement where … the terms of the agreement are clear and unambiguous." *2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital LLC*, 2001 WL 410074, at *6-7 (S.D.N.Y. April 23, 2001) (dismissing claims); *see Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357, 359 (S.D.N.Y. 1999) (same).

Here, the NYU portal prompted Ms. Romankow with a pop-up message requiring her to accept the terms of the Release, which she did.  *See* Ex. 38.  The Release bars her claims.

## V.    **The Plaintiffs' Breach of Contract Claim Fails.**

If the Court proceeds substantively to address the plaintiffs' breach of contract claim, it should dismiss it.  The implied contract between NYU and Ms. Romankow was, at most, that NYU would provide her the ability to earn academic credits in exchange for tuition.  *See Gally*, 22 F. Supp. 2d at 206 ("When a student enrolls … an implied contract arises: if the student complies with the terms … she will obtain the degree she seeks."); *accord Anthes v. New York Univ.*, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) (affirming dismissal).  The plaintiffs admit NYU upheld its end of the bargain: it continued to provide Ms. Romankow with remote instruction and academic credits.  AC ¶¶ 6, 18.  As a result, NYU did not breach this contract.  *See Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174, at *2-3 (E.D. La. Nov. 26, 2007) (rejecting claim by student who, after Hurricane Katrina, attended classes at another school, earned credits and graduated; there was no contract "that would entitle him to a free semester of law school").

To the extent that the plaintiffs imply that the contract had other, material components that they seek to jumble together from admissions, curriculum, and other materials, that attempt fails

because: (1) descriptions of the program courses or curriculum do not create an enforceable contract, particularly given NYU's disclaimers; (2) Covid-19 and the related government edicts closing schools rendered NYU's performance impossible; (3) there are no allegations that NYU acted in bad faith; and (4) damages are entirely speculative.

### A.    Descriptions of the London Program and Its Curriculum Do Not Create an Enforceable Contract.

"The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student" and "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim." *Gally*, 22 F. Supp. 2d at 207.  "[O]nly specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract … "  *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010) (affirming dismissal).

Courts repeatedly have acknowledged the need for universities to have flexibility to exercise "discretion in dealing with uncertain contingencies."  *Cuesnongle v. Ramos*, 713 F.2d 881, 885 (1st Cir. 1983) (rejecting claim)*; Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976) (rejecting claim and recognizing "wide latitude and discretion" afforded educational institutions).  In *Cuesnongle*, for example, following a teacher strike, a student sued, alleging, among other things, that his school breached a contract when it changed the starting date of classes, closed several course sections, and reduced student services and facilities.  713 F.2d at 882.  In rejecting the initial decision that there was a breach of contract, the Court noted that, "Even to think that a university could be found to have broken its contract when it changed the dates of classes, or the curriculum, for reasons beyond its control … should startle anyone at all familiar with university life."  *Id.* at 885.  As one Court explained,

'even if [a university does] not specifically reserve[] the right to make changes, courts have recognized that universities must have the flexibility to make changes in furtherance of their educational responsibilities. Certainly, … between a student's matriculation and graduation, an educational institution, which is a living, changing thing, may not reasonably be expected to remain static; and, conversely, change may reasonably be expected. Hence, each statement in a publication of what now is true does not necessarily become a term in the contract …'

*Cooper v. Peterson*, 626 N.Y.S.2d 432, 434 (N.Y. Sup. Ct. 1995) (quoting *Soderbloom v. Yale Univ.*, 1992 WL 24448, at *4 (Conn. Super. Ct. 1992)); *see also Cheves v. Trs. of Columbia Univ.*, 89 A.D.3d 463, 464 (1st Dep't 2011) (affirming dismissal where "nothing in [the Alumni Relations brochure serving as the basis of the plaintiff's claims] guarantee[d] unfettered, irrevocable access for alumni to the campus").

Here, NYU reacted to a global health crisis and the U.S. and U.K. governments' resulting closures of schools and prohibition on public gatherings by modifying the delivery of course instruction as necessary and "in furtherance of [its] educational responsibilities." *See Cooper*, 626 N.Y.S. at 434. It is not reasonable to expect that every statement made about NYU's intended course offerings pre-pandemic necessarily became an immovable contract term, much less a material term, on which students later could sue. Indeed, the plaintiffs admit that NYU "had unilateral discretion to alter [Ms. Romankow's] and Class Members['] curriculum as long as it generally adhered to the standards and promises that it made" (AC ¶ 114) and NYU "did not have a choice in cancelling in-person classes." AC ¶ 63. NYU's website and course registration system include a wide variety of information regarding anticipated course offerings and curriculum, including course descriptions, instructors, dates, and classrooms. Under the plaintiffs' theory, each such item would constitute an enforceable contract term, and a student could demand her money back if, for example, she completed the semester but a class was held in a different classroom than originally intended, or an instructor changed or went on parental leave, or a class was canceled

18

due to a storm.  The law dictates otherwise.  *See Cooper*, 626 N.Y.S. at 434.[5]

This conclusion is reinforced by the fact that NYU expressly reserved the right to change, relocate, and/or modify any fees or course offerings.  Exs. 15, 16, 17.  Universities can effectively disclaim any specific promises made in bulletins, course catalogs, or other materials or publications.  *See*, *e.g.*, *Gally*, 22 F. Supp. 2d at 206, n. 7 ("[University] could disclaim the existence of a specific promise through the use of … a [bulletin] disclaimer").  Such disclaimers bar breach of contract claims pertaining to those alleged promises.  *See Keles v. New York Univ.*, 1994 WL 119525, at *6 (S.D.N.Y. Apr. 6, 1994) (disclaimer precluded claim; university could change the requirements for matriculation); *Prusack v. New York*, 117 A.D.2d 729, 730 (2d Dep't 1986).[6]  "[A] party cannot justifiably rely on a representation that is specifically disclaimed … " *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2002).

*Prusack* is instructive.  There, the plaintiffs were students who enrolled in the State University of New York ("SUNY") on the understanding that tuition would be $6,000.  117 A.D.2d at 729.  SUNY later increased tuition, and the plaintiffs sued for breach of contract.  *Id.*  The Court found that "no breach of contract occurred" because "[t]he rights and obligations of the parties, as contained in the university's bulletins, became a part of the parties' contract" and those documents included "specific disclaimers … that the tuition charges were subject to change."  *Id.* at 730.

---

[5]     A court recently dismissed a breach of contract claim for tuition refunds following Covid-19 that alleged an implied obligation to provide in-person instruction in *Chong v. Northeastern University*, 2020 WL 5847626, at *3 (D. Mass. Oct. 1, 2020).  There, the Court held that the plaintiffs "have not plausibly established that the parties' agreement included a right to in-person instruction."  *Id.*  In so doing, the Court rejected the argument that "in-person instruction" "became part of the parties' contract when they registered for courses scheduled to 'be taught within an assigned room in specific buildings.'"  *Id.*

[6]     *See also Mangla v. Brown Univ.*, 135 F.3d 80 (1st Cir. 1998) (affirming dismissal); *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 579 (6th Cir. 1988) (reversing denial of motion for directed verdict); *Villareal v. Chamberlain Coll. of Nursing and Health Scis. Inc.*, 2019 WL 4736488, at *2–4 (S.D. Tex. Sept. 27, 2019) (dismissing claim).

So too here.  As an initial matter, any statements about NYU's New York's campus are irrelevant as Ms. Romankow never chose to attend NYU in New York, but rather only in London.  *See* AC ¶¶ 13, 29, 30, 32–36.  As to other statements on which the plaintiffs base their claims – such as references to "the prestigious RADA facilities," instruction and certification in "combat training," Shakespeare courses (AC ¶¶ 20, 77), and the number of hours of instruction anticipated for courses (*id.* ¶ 20), as well as vague references to "NYU's Course Catalog" and anticipated course offerings (*id.* ¶¶ 20, 88–89) – any expectation that NYU was contractually obligated to adhere, without any deviation or adjustment – even when providing those services would have been illegal – fails as a matter of law.  This is particularly so where NYU expressly retained the right to change at its sole discretion any "course offerings," including by modifying the content or schedule of, eliminating, or canceling such courses.  *See* Exs. 16, 17.  Indeed, NYU retained the contractual right to "change without notice *at any time at [its] sole discretion*," among other things, the "*course offerings*, schedules, activities … of the school and its departments and programs." *See* Ex. 16 (emphasis added).  NYU expressly informed students, and students agreed, that changes could include "the elimination of … *classes*, or *activities*; *the relocation of or modification of the content of any of the foregoing*; and the cancellation of scheduled classes" (*id.*  (emphasis added)), that "[c]lass schedule and room locations [are] subject to change," and "[c]lass meeting times may vary."  Ex. 17.  Thus, NYU did not promise that there would be no deviations from the expected curriculum, nor did it promise in-person instruction or activities – particularly when such became illegal and unsafe.

As to fees, the AC is vague as to which fees Ms. Romankow paid, which were refunded, and which allegedly should have been refunded but were not.  *See*, *e.g.*, AC ¶ 13.  They allude to the Registration and Services Fee (*id.* ¶ 85), which "furnish[es] resources to fund a portion of the

budgets for a variety of services, operations, and activities that serve students and enhance university life in support of our academic program" including "the Registrar, Student Health Center, the Wellness Exchange / Counseling Service, the Wasserman Center, Information Technology, and Student Life."  Ex. 42.  After Covid-19, NYU continued to provide these and other services remotely, including: career services through the Wasserman Center, academic support, advising, IT, and more.  *See* Ex. 32.  The plaintiffs' breach of contract claim must be dismissed.

### B.    Covid-19 Rendered Performance Impossible.

Even if the plaintiffs could make out a claim that there was an enforceable promise to provide in-person classes at immovable specific places and times (which they cannot), Covid-19 and resulting government orders rendered NYU's performance impossible.  Impossibility excuses performance where "destruction of … the means of performance makes performance objectively impossible" as a result of "an unanticipated event that could not have been foreseen or guarded against in the contract."  *Kolodin v. Valenti*, 115 A.D.3d 197, 200 (1st Dep't 2014) (finding impossibility); *see also Organizacion JD LTDA v. U.S. Dep't of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (affirming dismissal); *L. N. Jackson & Co. v. Royal Norwegian Gov't*, 177 F.2d 694, 697 (2d Cir. 1949) (performance "prohibited by … order").

In *Organizacion JD LTDA*, for instance, the plaintiffs sued two banks after the government seized money transfers related to drug trafficking.  18 F.3d at 93.  The plaintiffs asserted several causes of action, including breach of contract.  *Id.* at 95.  The Second Circuit affirmed dismissal of the breach of contract claims on impossibility grounds, holding that "the private intermediary banks cannot be subject to a damage action because the intervening government actions in ordering the seizures of the [transfers] rendered any enforceable contract impossible to perform."  *Id.*

Here, similarly, Covid-19 and the resulting government orders, not any bad faith act by

NYU, destroyed Ms. Romankow's ability to: immerse herself in London's "bustling and vibrant" life; attend trips to the theater, galleries, and "and places of architectural interest"; access RADA; complete combat training; go to a London library, sporting, and social events; and partake in other travel. AC ¶ 76. Leaving aside that NYU does not control whether or not London events such as musicals occur, Covid-19 and associated government orders limiting public gatherings, closing museums and galleries, and canceling football matches and theater performances rendered performance impossible. *See* Statement of Facts, § B. Accordingly, any alleged non-performance by NYU is excused by impossibility.

### C. There Are No Allegations NYU Acted in Bad Faith.

Judicial intervention in cases against universities is limited to circumstances where the school is alleged to have acted in bad faith, arbitrarily, or irrationally.[7] *See, e.g.*, *Rodriguez v. New York Univ.*, 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007); *Olsson v. Bd. of Higher Educ. of City of N.Y.*, 49 N.Y.2d 408 (1980). As the U.S. Supreme Court has stated, "[w]hen judges are asked to review the substance of a genuinely academic decision … they should show great respect for the faculty's professional judgment" and "may not override [an academic decision] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). To the extent an implied contract exists between students and a university, "[t]he essence of the implied contract is that an academic institution must act in good faith in its dealings with its students." *Olsson*, 49 N.Y.2d at 414. Thus, "[b]reach

---

[7]     To the extent the plaintiffs allege a breach of the implied covenant of good faith and fair dealing (AC ¶¶ 113-116), the claim must be dismissed for the same reason. *See Cordell v. McGraw-Hill Cos., Inc.*, 525 Fed. App'x 22, 23 (2d Cir. 2013) (affirming dismissal of implied duty of good faith and fair dealing claim where plaintiff failed to "plead[] any facts showing bad faith").

of contract claims brought by students against universities are 'subject to judicial review only to determine whether the defendants abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational.'" *Rodriguez*, 2007 WL 117775, at *4 (dismissing claims) (quoting *Babiker v. Ross Univ. School of Med.*, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd* 86 F. App'x 457 (2d Cir. 2004)).  Accordingly, courts dismiss breach of contract claims where the plaintiff has not alleged that the university acted in bad faith.  *See, e.g.*, *Olsson*, 49 N.Y.2d at 414 (dismissing claim where college "amply fulfilled its obligation to act in good faith").

Here, the plaintiffs do not sufficiently plead that NYU acted in bad faith.[8]  As just established, government edicts necessitated by Covid-19 made it illegal for NYU to provide in-person instruction and for Ms. Romankow to enjoy London's sporting and social events.  NYU did not simply refuse arbitrarily to provide in-person instruction.  Rather, the plaintiffs acknowledge that NYU "did not have a choice in cancelling in-person classes."  AC ¶ 63.  Against this reality, the plaintiffs summarily pronounce that NYU "exercised its discretion to provide appropriate refunds in bad faith" (AC ¶ 117), but they do not provide any factual support for that entirely conclusory allegation, and the AC recognizes that "NYU has to continue paying rent for their buildings and teachers who are still diligently teaching their students ... "  AC ¶ 62.

Ms. Romankow never intended to study in New York – but in London – so her claims

---

[8]     For reasons that are not entirely clear, the plaintiffs also mention online posts regarding Change.org petitions.  AC ¶¶ 62, 83.  These petitions do not provide a basis for their claims.  First, the Court need not presume the rambling musings in the Change.org petitions are true, as none of these "facts" "can be accurately and readily determined" and do not derive "from sources whose accuracy cannot reasonably be questioned."  Fed R. Evid. 201(b)(2).  The purported "students" and "people" who signed the petitions are not named plaintiffs, and may not in fact even be NYU students at all, as anyone has the ability to access and sign a Change.org petition.  If the Court considers them, it should also note there were other competing petitions, which urged NYU to close its campus to ensure the safety of students and staff because of Covid-19.  *See* Exs. 43–45.

23

regarding resources and services in New York City (*see* AC ¶¶ 29, 30, 32–36) lack any basis as applied to her.  And, again, NYU did not act arbitrarily or in bad faith to prevent students' access to the NYU London RADA program, facilities, and social and sporting events in London (*see* AC ¶¶ 76, 77); the growing threat of Covid-19, international travel restrictions, and government edicts prohibiting in-person events and large gatherings did.  *See supra*, Statement of Facts, § B. Accordingly, there is no colorable allegation that NYU acted in bad faith.

**D.      The Plaintiffs Failed Adequately to Allege Damages.**

A plaintiff must plead "cognizable damages" as a result of the defendant's alleged breach. *See Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2-3 (S.D.N.Y. Dec. 15, 2016) (dismissing claim); *see also House of Europe Funding I, Ltd. v. Wells Fargo Bank*, N.A., 2014 WL 1383703, at *10-11 (S.D.N.Y. Mar. 31, 2014) (same); *Int'l Bus. Machs. Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) (same).  NYU provided educational credits in exchange for the tuition paid (AC ¶ 92), so the plaintiffs have not pled that they suffered any damages.

An allegation that the fact that Covid-19 required a portion of the semester's instruction to be remote somehow devalued Ms. Romankow's education is too speculative to support a claim. To ascertain liability and damages, the Court would have to examine the method and effectiveness of each course of instruction by each professor prior to Covid-19 and then, after, assess the value of in-person instruction as compared to remote instruction as perceived by the particular student, on a course-by-course basis, and calculate the percentage of tuition (if any) that should be refunded on a course-by-course basis.  *See Mihalakis v. Cabrini Med. Ctr.* 151 A.D.2d 345, 346 (1st Dep't 1989) (the "difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that defendants represented to plaintiff" was too speculative to support a claim for fraud); *Gomez-Jimenez v. N.Y. Law Sch.*, 36

Misc. 3d 230, 248-252, 260 (Sup. Ct. N.Y. Cty. 2012) (dismissing claim; "plaintiffs [sic] theory of damages … an award of the difference between what they paid for their law degree and an amount representing its ostensibly lesser intrinsic worth … is entirely too speculative and remote to be quantified as a remedy under the law"); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 93 (S.D.N.Y. 2012) ("a general decline" in value "insufficient" to plead "damages").  Because the plaintiffs fail to allege any non-speculative way to assess damages, the claim must be dismissed.

## VI.   The Plaintiffs' Unjust Enrichment Claim Must Be Dismissed.

### A.   The Unjust Enrichment Claim Is Duplicative of the Breach of Contract Claim.

A claim for unjust enrichment must be dismissed where it is "merely duplicative." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016).  Unjust enrichment "is not a catchall cause of action" and "is not available where it simply duplicates … a conventional contract … claim."  *Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. Jul. 20, 2016) (citation and internal quotation marks omitted).  Claims should be dismissed as duplicative when they are "based on the same factual allegations underlying its contract and tort claims." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018).

Moreover, courts have held that students may not assert unjust enrichment claims against universities where the relationship is governed by a contract.  *See*, *e.g.*, *Yalincak v. New York Univ.*, 2009 WL 10714654, at *14 (D. Conn. Sept. 3, 2009) (applying New York law).  In *Yalincak*, the plaintiff, a former NYU student, asserted multiple claims, including for breach of contract and unjust enrichment.  *See Id.* at *9-10, *14.  The Court dismissed the unjust enrichment claim, finding that "[a]s plaintiff acknowledges, he and NYU had an implied contract … governed by the university's bulletins and regulations.  Because Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment."  *Id.* (citation omitted); *see also Jeffers v. Am. Univ. of Antigua*,

125 A.D.3d 440, 443 (1st Dep't 2015) (rejecting students' unjust enrichment claim); *Gokool v. Okla. City Univ.*, 716 F. App'x 815, 819 (10th Cir. 2017) (affirming dismissal of unjust enrichment claim; "[T]here is nothing wrong about the University keeping [plaintiff's] first-year tuition because she received the instruction the school agreed to provide"); *Chong*, 2020 WL 5847626, at *4 (dismissing unjust enrichment claim).

The same result is compelled here.  The plaintiffs' unjust enrichment claim is duplicative:

| Unjust Enrichment Allegations | Breach of Contract Allegations |
| --- | --- |
| "Plaintiffs and the Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiffs and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities."  (AC ¶ 122). | "Plaintiffs and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services."  (*Id.* ¶ 109). |

Accordingly, the unjust enrichment claim must be dismissed.[9]

**B.    NYU Was Not Unjustly Enriched.**

To state a claim for unjust enrichment, "a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity and good conscience require the defendant to make restitution."  *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014).  A mere allegation that a defendant "received benefits … is insufficient … "  *Samad v. Goldberg*, 2016 WL 6678923, at *9

---

[9]    The fact that the unjust enrichment claim is pled in the alternative does not save it. "Unjust enrichment may be plead in the alternative where the plaintiff challenges the validity of the contract; it may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract."  *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009) (dismissing claim); *see also Kamdem-Ouaffo v. Pepsico, Inc.*, 2015 WL 1011816, at *13 (S.D.N.Y. Mar. 9, 2015) (same); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (same).  Here, the plaintiffs do not challenge the validity of the contract.

(S.D.N.Y. Nov. 14. 2016) (quotation omitted).  A plaintiff must establish that "it is against equity and good conscience" for the defendant to retain the money, such as "some mistake or deception practiced upon" the plaintiff by the defendant.  *Goel*, 111 A.D.3d at 791, 792 (citations omitted) (dismissing claim); *see also Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016) (dismissing claim).

Here, the plaintiffs voluntarily paid Ms. Romankow's tuition and fees to NYU in exchange for educational services and credits, and NYU provided them.  And, the AC admits that "NYU ha[d] to continue paying rent for their buildings and teachers who are still diligently teaching their students. "  AC ¶ 62.  The plaintiffs have not alleged any facts demonstrating that "equity and good conscience" mandate the return of the tuition paid given an unprecedented pandemic followed by state-wide shelter-in-place orders, which forced NYU to transition to remote instruction.  To the contrary, if NYU "were required to reimburse plaintiff for ... tuition payments [they] made, *plaintiff[s]* would be unjustly enriched."  *See Roe*, 2007 WL 4219174, at *3 (rejecting claim) (emphasis added); *Yalincak,* 2009 WL 10714654, at *14 (student "received the educational benefit of his tuition payments when he took classes").

Where, as here, Ms. Romankow "receive[d] the benefits of the services defendants provided," the plaintiffs "do[] not have an equitable claim to return of the sums paid."  *Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958 (4th Dep't 1990); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002) (rejecting claim).  And, NYU already refunded fees associated with certain services that would not be provided in light of Covid-19.  *See* Exs. 25, 30, 31.  Accordingly, the unjust enrichment claim fails.

## VII.   The Plaintiffs' Conversion Claim Must Be Dismissed.

### A.   The Conversion Claim Is Duplicative of The Breach of Contract Claim.

"[A]n action for conversion cannot lie where damages are merely sought for breach of

contract." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) (dismissing claim); *see also Jeffers*, 125 A.D.3d at 443 (same); *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, 2009 WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (same). "Where a conversion claim is grounded in a contractual dispute, the plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *OTG Brands, LLC v. Walgreen Co.*, 2015 WL 1499559, at *9 (S.D.N.Y. Mar. 31, 2015) (quotation omitted).

Here, the plaintiffs' conversion claim is premised on the same allegations as their breach of contract claim, not any unlawful or wrongful conduct by NYU. The plaintiffs paid tuition and, in return, NYU provided educational services. *See Armored Group*, 2009 WL 1110783, at *3 (dismissing conversion claim). In any event, NYU's conduct was not wrongful or unlawful as NYU could not have continued in-person classes given the governmental orders to the contrary.

### B.    The Right to In-Person Classes Is Intangible Property Not Subject to a Conversion Claim.

The conversion claim must be dismissed because "in-person educational services" (AC ¶ 88) are not tangible property. The "conversion of intangible property is not actionable under New York law." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206–07 (S.D.N.Y. 2008) (dismissing conversion claim). Tangible items that are the proper subject of conversion claim are some form of actual property, not "indefinite, intangible, and incorporeal species of property." *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 864 (4th Dep't 1987) (dismissing conversion claim); *see also Zirvi v. Flatley*, 433 F. Supp. 3d 448, 466 (S.D.N.Y. 2020) (same). Because in-person classes are not "tangible" property, the plaintiffs' conversion claim must be dismissed.

### C.    The Plaintiffs Had No Ownership Interest in and NYU Did Not Exercise Unauthorized Dominion Over In-Person Classes.

"Conversion is the exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession." *Citadel Mgmt.*, 123 F.

Supp. 2d at 147 (quotation omitted).   Thus, "a plaintiff must allege" that the "plaintiff had ownership, possession or control over the property before its conversion." *Kirschner v. Bennett,* 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (quotation omitted); *see also Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) ("[P]laintiff must demonstrate that he has legal title or an immediate superior right of possession to the identifiable fund.") (quotation omitted); *OTG Brands*, 2015 WL 1499559, at \*9-10 (dismissing conversion claim; plaintiff did not identify "property in which they have title or right").

Here, the plaintiffs fail to allege facts demonstrating ownership or title over in-person classes.   Indeed, they point to no evidence indicating an entitlement to classes conducted solely through in-person instruction.   The opposite is true – the university, through its bulletins, reserved all control and ownership over course offerings, including the right "to change [them] without notice at any time *at the sole discretion of the administration*."   *See* Exs. 16, 17.   The plaintiffs agreed to the administration's exclusive control and ownership by making payment of tuition or attending classes.   *Id.*   Moreover, because NYU expressly retained the right to change its course offerings, it did not exercise unauthorized dominion over the plaintiffs' alleged property by transitioning to remote instruction.   Accordingly, the conversion claim must be dismissed.

## CONCLUSION

The AC should be dismissed with prejudice.   The plaintiffs should not be permitted leave to amend further because they already amended, failed to correct the numerous deficiencies identified, and amendment is futile.   *See Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292 (S.D.N.Y. 2018) (Daniels, J.) (denying leave to amend).

Dated: November 5, 2020

Respectfully submitted,

**DLA PIPER LLP (US)**

  _/s/ Keara M. Gordon_
Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

## CERTIFICATE OF SERVICE

I hereby certify that I am one of the attorneys for the defendant in this action and that on November 5, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

 /s/ *Keara M. Gordon*
Keara M. Gordon